GREENWICH CITIZENS COMMITTEE, INC., Concerned Citizens of Hudson Falls/Kingsbury, Melody Mackenzie-Brown, Bruce Barthel, Stephanie Wenk, Sandra Hewitt, Lionel Sharp, and Robert Daly, individually and on behalf of all others similarly situated, Plaintiffs-Appellees-Cross-Appellants,

v.

COUNTIES OF WARREN AND WASHINGTON INDUSTRIAL DEVELOPMENT AGENCY, and Board of Supervisors of the County of Warren, Defendants-Appellants-Cross-Appellees.

Nos. 70, 71 and 154, Docket 94-9258, 94-9288, and 94-9290.

United States Court of Appeals, Second Circuit.

Argued Oct. 11, 1995.

Decided Feb. 16, 1996.

27

James B. Tuttle, Dreyer, Boyajian & Tuttle, Albany, N.Y., for defendant-appellant-cross-appellee Board of Supervisors of the County of Warren.

James A. Resila, Carter, Conboy, Case, Blackmore, Napierski & Maloney, Albany, N.Y., for defendant-appellant-cross-appellee Counties of Warren and Washington Industrial Development Agency.

Robert B. Remar, Kirwan, Goger, Chesin & Parks, Atlanta, Ga.; (Salvatore D. Ferlazzo, Ruberti, Girvin & Ferlazzo, Albany, N.Y., on the brief), for plaintiffs-appellees-cross-appellants.

Before: NEWMAN, Chief Judge, LUMBARD and CABRANES, Circuit Judges.

JON O. NEWMAN, Chief Judge:

This appeal primarily concerns the state-of-mind requirement for governmental liability under 42 U.S.C. § 1983 for alleged violations of the First Amendment arising out of retaliatory state action. The principal issue is whether a governmental defendant in an underlying state court lawsuit must be shown to have acted with retaliatory intent in filing counterclaims before it may be held liable for

chilling the First Amendment rights of the plaintiffs who brought the lawsuit. This issue arises on an appeal by Appellants–Cross–Appellees Counties of Warren and Washington Industrial Development Agency ("IDA") and Board of Supervisors of the County of Warren ("Warren County") from the November 10, 1994, and November 16, 1994, judgments of the District Court for the Northern District of New York (Thomas J. McAvoy, Chief Judge). These judgments, entered after a jury trial, awarded damages and attorney's fees to Appellees–Cross–Appellants Greenwich Citizens Committee, Inc. and other plaintiffs in an underlying state court lawsuit (the "Greenwich plaintiffs"). IDA and Warren County contend that the District Court erred in omitting from its jury instructions the need for a finding that they filed their counterclaims with retaliatory intent. The Greenwich plaintiffs cross-appeal to challenge the amount of attorney's fees awarded. We agree that the jury instructions were erroneous, and therefore reverse and remand for a new trial.

## Background

### I. The Underlying State Court Lawsuit

IDA is a municipal government agency whose goal is to promote and support certain industrial projects that it believes will benefit the Counties of Warren and Washington in upstate New York. In the late 1980s, IDA, Warren County, Washington County, and Essex County jointly approved plans for the construction of a solid waste incinerator to be located in Hudson Falls, New York. IDA entered into a contract with Adirondack Resource Recovery Associates ("ARRA") to develop the project. ARRA is a limited partnership consisting of Foster Wheeler Hudson Falls, Inc., as its general partner, and Adirondack Resource Recovery Corporation, as its limited partner. In January 1989, in order to finance the project, IDA entered into a bond purchase agreement with Smith Barney Harris Upham & Company ("Smith Barney"). The agreement called for the purchase and sale of revenue bonds worth $74,050,000. The closing of the bond sale was scheduled for February 14, 1989.

In the meantime, numerous community groups and local residents, including the Greenwich plaintiffs, actively opposed the construction of the solid waste incinerator. On February 9, 1989, five days before the scheduled date of the bond closing, the Greenwich plaintiffs filed a lawsuit in New York Supreme Court (Washington County), seeking a declaratory judgment against IDA, Warren County, and Washington County for failing to hold adequate public hearings on the project, for failing to conduct proper environmental impact studies in approving the financing and construction of the project, and for failing to comply with applicable environmental guidelines. This litigation was based, in part, on the fact that Essex County, one of the three original county participants, had dropped out of the project after the initial environmental impact studies had been prepared. In conjunction with the filing of their lawsuit, the Greenwich plaintiffs also held two press conferences. One of the Greenwich plaintiffs, Stephanie Wenk, telephoned Moody's Investor Services specifically to apprise the bond rating company of the pending litigation.

The commencement of the Greenwich plaintiffs' state court lawsuit caused the market for IDA's municipal bonds to deteriorate. Prospective bond purchasers demanded a discount from their original commitment in order to proceed with the closing. As a result, Smith Barney was forced to request a concession from Foster Wheeler Power Systems, Inc. ("Foster Wheeler"), the parent company of Foster Wheeler Hudson Falls, Inc., IDA's general partner in the project. Smith Barney agreed to sell the municipal bonds at a two percent discount, provided that Foster Wheeler would agree to pay the difference of $1,841,000 to Smith Barney. Foster Wheeler accepted the terms of the agreement and paid the difference; however, Foster Wheeler later informed IDA that it was holding IDA responsible for paying those funds. Subsequently, in litigation, Foster Wheeler asserted a claim against IDA for the $1,841,000 as part of the project cost.[1]

1. The record does not disclose the result of this litigation between Foster Wheeler and IDA.

The following month, IDA, Warren County, and Washington County filed their joint answer to the Greenwich plaintiffs' state court complaint. In their answer, they asserted three counterclaims against the Greenwich plaintiffs for prima facie tort, interference with contract, and frivolous litigation.[2] The Greenwich plaintiffs moved to dismiss the counterclaims, and the trial court denied the motion. On appeal, however, the Appellate Division reversed and dismissed the counterclaims. *See Schulz v. Washington County*, 157 A.D.2d 948, 550 N.Y.S.2d 446 (3d Dep't 1990). Subsequently, the Greenwich plaintiffs' underlying state court lawsuit was also dismissed. *See Greenwich Citizens Committee, Inc. v. Counties of Warren and Washington Industrial Development Agency*, 164 A.D.2d 469, 565 N.Y.S.2d 239 (3d Dep't 1990), *appeal denied*, 77 N.Y.2d 810, 571 N.Y.S.2d 912, 913, 575 N.E.2d 399 (1991), *and cert. denied*, 502 U.S. 1076, 112 S.Ct. 976, 117 L.Ed.2d 140 (1992).

## II. The Federal Lawsuit

In March 1992, the Greenwich plaintiffs filed the pending federal lawsuit in the Northern District of New York, alleging that IDA and Warren County had filed their state court counterclaims in violation of 42 U.S.C. § 1983. The Greenwich plaintiffs claimed that their First Amendment rights had been chilled by the filing of the counterclaims. In essence, they alleged that IDA and Warren County had engaged in what has been labeled "SLAPP" litigation. *See generally* George W. Pring & Penelope Canan, *"Strategic Lawsuits Against Public Participation"* *("SLAPPs"): An Introduction for Bench, Bar and Bystanders*, 12 U.Bridgeport L.Rev. 937 (1992).[3] IDA and Warren County responded by claiming that they had filed their counterclaims solely for the legitimate purpose of recovering any monetary damages caused by the Greenwich plaintiffs' tortious interference with the bond closing.

On cross-motions for summary judgment, the District Court held that, in order to establish a prima facie case, the Greenwich plaintiffs must show that "(1) their actions are protected by the First Amendment; (2) defendants' actions have the effect of chilling plaintiffs' First Amendment rights; and (3) defendants' actions are motivated by or substantially caused by plaintiffs' decision to exercise these rights." The District Court rejected the contention by IDA and Warren County that the Greenwich plaintiffs must also prove that IDA and Warren County filed their state court counterclaims with retaliatory intent.

The District Court then found as a matter of law that (1) the Greenwich plaintiffs' actions in filing their state court lawsuit and in communicating with the news media were constitutionally protected activities, and (2) under *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), the Greenwich plaintiffs' protected conduct was a "but for" cause of the adverse state action committed by IDA and Warren County. The District Court therefore concluded that the sole issue remaining for trial was whether or not the Greenwich plaintiffs had suffered any chilling effect. At trial, the jury was presented with only two questions: (1) whether the filing of the state court counterclaims had any chilling effect on the Greenwich plaintiffs' First Amendment rights, and (2) what amount of damages, if any, should be awarded. The jury found in favor of the Greenwich plaintiffs and awarded compensatory damages of $62,980. The District Court subsequently awarded attorney's fees, although it did so in an amount less than that requested.

## Discussion

In order to recover damages under 42 U.S.C. § 1983, a plaintiff must show that (1) "the conduct complained of was committed by a person acting under color of state

---

**2.** Washington County subsequently withdrew its counterclaims and is not a party to the pending federal lawsuit.

**3.** The Greenwich plaintiffs' pending section 1983 lawsuit is known as a "SLAPPback." *See* William B. Chapman, *LaPointe v. West Contra Costa Sanitary District*, C935 ALI–ABA 155 (1994) (detailing first successful SLAPPback brought under section 1983).

law," and (2) "this conduct deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States." *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981). The statute does not require that a defendant have acted with any particular state of mind beyond that required to establish a violation of the underlying constitutional right. *Id.* at 532–35, 101 S.Ct. at 1911–13; *see Daniels v. Williams*, 474 U.S. 327, 329–30, 106 S.Ct. 662, 664, 88 L.Ed.2d 662 (1986). The question in each case therefore becomes whether the underlying constitutional right contains any state-of-mind requirement.

Here, the District Court ruled, relying on *Mt. Healthy*, that the First Amendment does not contain any state-of-mind requirement. *See also Kamenesh v. City of Miami*, 772 F.Supp. 583, 587 n. 2 (S.D.Fla.1991) (stating in dicta that First Amendment disregards entirely public employer's intent to do harm, and focuses instead on rigid cause-and-effect analysis). The District Court interpreted *Mt. Healthy* as imposing a standard of strict liability based purely on cause and effect, that is, if the Greenwich plaintiffs' protected conduct (*i.e.*, the filing of their state court lawsuit) "caused" IDA and Warren County to engage in some adverse state action (*i.e.*, the filing of their state court counterclaims), then IDA and Warren County would be held liable for any resulting chilling effect. Thus, the District Court concluded that the Greenwich plaintiffs need not show that IDA and Warren County acted with retaliatory intent.

The Supreme Court has held that, at least with some provisions of the Constitution, various state-of-mind requirements must be met in order to establish damages liability, *see Daniels*, 474 U.S. at 332–34, 106 S.Ct. at 665–67 (Due Process Clause requires showing of more than mere negligence); *Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 265, 97 S.Ct. 555, 563, 50 L.Ed.2d 450 (1977) (Equal Protection Clause requires showing of discriminatory intent); *Estelle v. Gamble*, 429 U.S. 97, 105,

97 S.Ct. 285, 291–92, 50 L.Ed.2d 251 (1976) (Eighth Amendment requires showing of "deliberate indifference"). The Court has provided less guidance, however, concerning the state-of-mind requirement for constitutional torts alleged to have caused injury in violation of the First Amendment. *See Procunier v. Navarette*, 434 U.S. 555, 559 n. 6, 566 n. 14, 98 S.Ct. 855, 858 n. 6, 862 n. 14, 55 L.Ed.2d 24 (1978) (declining to decide whether negligent conduct could form basis for First Amendment violation). The issue is further complicated by the fact that violations of the First Amendment may arise in a variety of contexts. *See, e.g., Boos v. Barry*, 485 U.S. 312, 108 S.Ct. 1157, 99 L.Ed.2d 333 (1988) (facial challenge to statute); *Procunier*, 434 U.S. at 557–58, 98 S.Ct. at 857–57 (interference with prisoner mail); *Mt. Healthy*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (retaliatory discharge); *New York Times Co. v. United States*, 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971) (prior restraint).

■ We think it clear that, at least for a claim of a First Amendment violation arising in the context of litigation, a governmental entity alleged to have chilled a litigant's freedom of speech by filing counterclaims in response to a complaint must be shown to have acted with retaliatory intent.[4] Otherwise, the filing of counterclaims by a governmental entity would subject that entity to strict liability under section 1983, a result the Supreme Court has rejected. *See Younger v. Harris*, 401 U.S. 37, 51, 91 S.Ct. 746, 754, 27 L.Ed.2d 669 (1971) ("[T]he existence of a 'chilling effect,' even in the area of First Amendment rights, has never been considered a sufficient basis, in and of itself, for prohibiting state action."); *Cameron v. Johnson*, 390 U.S. 611, 619–20, 88 S.Ct. 1335, 1339–40, 20 L.Ed.2d 182 (1968) (police officers' arrests held not actionable in absence of proof of bad-faith enforcement of anti-picketing statute, even though protest picketing was "but for" cause of police arrests); *see*

---

**4.** The following discussion focuses solely on the appropriate state-of-mind requirement for violations of the underlying First Amendment right. We do not consider, nor attempt to resurrect, any good-faith immunity defense under section

1983. *See Owen v. City of Independence*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980) (good-faith immunity defense unavailable for local government entities).

*also Bell v. School Board,* 734 F.2d 155, 157 (4th Cir.1984) (alternate holding that school board's litigation actions, prompted by plaintiff's protected speech, were not actionable in absence of evidence of "evil motive"); *id.* at 158 (Rosenn, J., concurring) (same).

■ More recently, in *Waters v. Churchill,* —— U.S. ——, 114 S.Ct. 1878, 128 L.Ed.2d 686 (1994), the Supreme Court held that, under certain circumstances, the State may act adversely with respect to (what turns out to be) protected speech, so long as it does so without any intent to retaliate for the exercise of First Amendment rights. *See id.* at —— – ——, 114 S.Ct. at 1890–91 (plurality opinion) (if, after reasonable investigation, public employer "really did believe" that speech was unprotected, then employee discharge was proper); *id.* —— – ——, 114 S.Ct. at 1891–93 (Souter, J. concurring) ("[A] public employer who reasonably believes ... that an employee engaged in constitutionally unprotected speech may punish the employee...."); *id.* at —— – ——, 114 S.Ct. at 1893–95 (Scalia, J., joined by Kennedy and Thomas, JJ., concurring in the judgment) ("[A] public employer's disciplining of an employee violates ... the First Amendment only if it is in retaliation for the employee's speech on a matter of public concern."). Thus, the Supreme Court has held that governmental entities may act properly in furtherance of legitimate state interests, even though such state action incidentally chills First Amendment rights. *Younger,* 401 U.S. at 51, 91 S.Ct. at 754; *Cameron,* 390 U.S. at 619, 88 S.Ct. at 1340 ("Any chilling effect ... that flows from good-faith enforcement of this valid statute would not, of course, constitute that enforcement an impermissible invasion of protected freedoms."). We see no reason under section 1983 to depart from this well-established rule of First Amendment law.

■ In this case, we hold that, even though the Greenwich plaintiffs have shown cause and effect, in the strict sense that IDA

and Warren County would not have filed their state court counterclaims "but for" the Greenwich plaintiffs' filing of their state court lawsuit, the Greenwich plaintiffs are nevertheless required to persuade the jury that the counterclaims were filed, not as a legitimate response to litigation, but as a form of retaliation, with the purpose of deterring the exercise of First Amendment freedoms.[5] *See Harrison v. Springdale Water & Sewer Commission,* 780 F.2d 1422, 1428 (8th Cir.1986) (plaintiff sufficiently stated cause of action under section 1983 where complaint alleged that counterclaim filed by State was "frivolous" and was "filed as a tactical move to put pressure on [plaintiff] to settle"); Chapman, *supra,* C935 ALI–ABA at *161–65 (retaliatory intent is essential element of SLAPPback complaint); *see also Dombrowski v. Pfister,* 380 U.S. 479, 490, 85 S.Ct. 1116, 1122–23, 14 L.Ed.2d 22 (1965). Moreover, under traditional dual-motivation analysis, if the Greenwich plaintiffs are successful in persuading a jury that IDA and Warren County were prompted to file their counterclaims with retaliatory intent, IDA and Warren County would still be entitled to avoid liability if they could persuade the jury that they would have filed the counterclaims even in the absence of the impermissible reason. *See Mt. Healthy,* 429 U.S. at 287, 97 S.Ct. at 576.

It is important to emphasize that we do not decide here whether the state of mind of a governmental defendant is relevant to *all* First Amendment claims. There is a crucial distinction between retaliatory First Amendment claims and affirmative First Amendment claims (*e.g.,* facial challenges to statutes, challenges to prior restraints). Although the Supreme Court has never expressly held that the two types of claims involve different elements of proof, the Court appears to have proceeded from that assumption. With retaliatory claims, the Court has emphasized the significance of the subjective state of mind of the state actor; however, with most affirmative claims, the

---

**5.** Among the issues that the Greenwich plaintiffs might litigate in attempting to prove retaliation are (1) whether the counterclaims were frivolous, (2) whether IDA and Warren County filed their counterclaims without having yet suffered any

cognizable damages, and (3) whether IDA and Warren County made any threatening statements to the Greenwich plaintiffs in the course of filing their counterclaims.

Court has focused on the objective nature of the challenged restriction. *See Cameron,* 390 U.S. at 615–16, 617–19, 88 S.Ct. at 1337–38, 1338–40 (1968) (using different analyses for claim challenging statute on its face and claim challenging statute as applied against picketers); *id.* at 622, 88 S.Ct. at 1341 (Fortas, J., dissenting) (same); *Cox v. Louisiana,* 379 U.S. 559, 560, 564, 85 S.Ct. 476, 479, 480–81, 13 L.Ed.2d 487 (1965) (same). Although a showing of retaliatory intent is required for a retaliatory First Amendment claim, it appears not to be required for most affirmative First Amendment claims. The latter type of claim, however, is not before us in this case, and we need not decide the issue at this time.

In an effort to avoid the requirement of proving retaliatory intent, the Greenwich plaintiffs call our attention to certain language in *Mt. Healthy* that, if read in isolation, would appear to call for the strict cause-and-effect analysis adopted by the District Court. The Supreme Court articulated its test of "but for" causation as follows:

> Initially, in this case, the burden was properly placed upon respondent to show that his *conduct* ... was a "substantial factor" ... in the Board's decision not to rehire him. Respondent having carried that burden, however, the District Court should have gone on to determine whether the Board had shown by a preponderance of the evidence that it would have reached the same decision ... even in the absence of the *protected conduct.*

*Mt. Healthy,* 429 U.S. at 287, 97 S.Ct. at 576 (emphasis added). Thus, the Supreme Court focused on the causative effect of the plaintiff's protected conduct rather than the combined causative effect of the plaintiff's conduct and the defendant's impermissible reason. This language could be read to enunciate a test of strict liability that disregards the defendant's state-of-mind.

There is ample evidence, however, that *Mt. Healthy* is not to be understood as dispensing with the traditional state-of-mind requirement for retaliatory First Amendment claims. First, *Mt. Healthy* relied on *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), which explicitly stated that a showing of "retaliation" is necessary for the plaintiff to prove a prima facie case. *Perry,* 408 U.S. at 598, 92 S.Ct. at 2698. *Perry* declared that the plaintiff must "show that the [adverse state action] was, in fact, made *in retaliation* for his exercise of the constitutional right of free speech." *Id.* (emphasis added); *see also Waters,* —— U.S. at ——, 114 S.Ct. at 1895 (Scalia, J., joined by Kennedy and Thomas, JJ., concurring in the judgment). Second, in *Mt. Healthy* there was no dispute that an impermissible reason had at least partially caused the defendant's adverse state action. The only issue before the Supreme Court was whether the defendant could nonetheless avoid liability by showing that it would have taken the same action in the absence of the impermissible reason. The Court had no need to focus precisely on the causative effect of the defendant's impermissible reason for acting, in addition to focusing on the causative effect of the plaintiff's protected conduct standing alone.

■ Therefore, we are satisfied that, although the language in *Mt. Healthy* refers to the plaintiff's *conduct,* the Court's analysis, properly understood, attempts to weigh the impact of the defendant's *impermissible reason* on the defendant's decision to act. In *Cabrera v. Jakabovitz,* 24 F.3d 372 (2d Cir. 1994), we understood *Mt. Healthy* to approach dual-motivation analysis in this manner, since we framed the test of "but for" causation in terms of the impact of the "impermissible reason." *Cabrera,* 24 F.3d at 383; *see Price Waterhouse v. Hopkins,* 490 U.S. 228, 252, 109 S.Ct. 1775, 1791–92, 104 L.Ed.2d 268 (1989) (referring to "impermissible motive"); *North Mississippi Communications, Inc. v. Jones,* 874 F.2d 1064, 1069 (5th Cir.1989) (same). Whether the impermissible reason had a causative effect on the adverse state action in a dual-motivation case is decided by asking the trier-of-fact first to determine whether the impermissible reason was at least part of the defendant's basis for its action, and, if so, then to answer the hypothetical question, "Would the defendant have taken the same adverse action even if the impermissible reason had not existed?".

■ In those cases where the principally disputed issue is whether the defendant was motivated to take the adverse state action in retaliation for conduct protected by the Constitution, or because of some other conduct, it will normally make no difference whether a court refers to "protected conduct" or "impermissible reason." In a typical dual-motivation case like *Mt. Healthy*, the plaintiff took two actions (in *Mt. Healthy*, speaking on a matter of public concern and teaching incompetently). The issues are whether the defendant acted in retaliation for the protected conduct, and, if so, whether the defendant would have taken the same action in the absence of the retaliatory intent. Thus, where the defendant was prompted to act on the basis of seeking to penalize the plaintiff for some conduct that enjoys protection, the defendant can properly be said to be acting on the basis of either "protected conduct" or "impermissible reason." In such cases, the two phrases can be used interchangeably without altering the analysis, and it has not been uncommon for courts after *Mt. Healthy* to use both phrases as synonyms for each other. In *Price Waterhouse*, for example, the Supreme Court quoted from *Mt. Healthy*, stating that the defendant had the burden "to prove 'that it would have reached the same decision as to [the plaintiff] even in the absence of the *protected conduct*,'" 490 U.S. at 249, 109 S.Ct. at 1790 (quoting *Mt. Healthy*, 429 U.S. at 287, 97 S.Ct. at 576) (emphasis added); then, in the next sentence, the opinion states that a court finding the defendant has not sustained this burden "has effectively concluded that an *illegitimate motive* was a 'but-for' cause of the employment decision." *Id.* emphasis added); *see also Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir.1989); *Tanner v. McCall*, 625 F.2d 1183, 1192 (5th Cir.1980), *cert. denied*, 451 U.S. 907, 101 S.Ct. 1975, 68 L.Ed.2d 295 (1981); *Davis v. Village Park II Realty Co.*, 578 F.2d 461, 464 (2d Cir.1978). In such cases, a finding that the defendant acted because of the protected *conduct* is tantamount to a finding that the defendant acted with retaliatory *intent*.

■ Yet there are other cases, such as the one present here, where the distinction between "protected conduct" and "impermissible reason" becomes important. Such cases arise when the plaintiff's protected conduct is a unitary event that could prompt either a permissible or an impermissible reason on the part of the defendant to act, or possibly both reasons. *See, e.g., Bell v. School Board*, 734 F.2d 155 (4th Cir.1984). In these situations, "protected conduct" does not necessarily equal "impermissible reason," and if the test of "but for" causation is phrased in terms of the impact of the "protected conduct," then this phrase becomes an inadequate proxy for the proper inquiry into whether the defendant acted with retaliatory intent. In cases involving unitary events, claims of alleged retaliation for the exercise of a constitutional or statutory right require focusing precisely on whether the defendant acted for an impermissible reason, and not merely in response to the plaintiff's conduct. This is so where the defendant does not dispute that it acted in response to the plaintiff's conduct, but asserts that its response was prompted by a legitimate reason, not an impermissible one.

For the foregoing reasons, we conclude that it was error for the District Court to omit from the jury charge the element of retaliatory intent in describing what the Greenwich plaintiffs had to prove in order to hold IDA and Warren County liable for filing their state court counterclaims. The omission of this element requires that we reverse the judgment and remand for a new trial.[6] In view of the disposition of this appeal brought by IDA and Warren County, the Greenwich plaintiffs' cross-appeal, challenging the amount of attorney's fees awarded, is dismissed as moot.

6. IDA and Warren County do not advance, nor do we consider, the argument that they may not be held liable for the filing of their counterclaims under the theory that such liability would impair their own First Amendment rights to conduct legitimate litigation.