LOMBARDI REST HOME, INC., ET AL. *v.*
GARY RICHTER ET AL.
(AC 19650)

Lavery, C. J., and Mihalakos and Flynn, Js.

Argued February 14—officially released June 5, 2001

*William S. Palmieri,* with whom, on the brief, was *John R. Williams,* for the appellants (plaintiffs).

*Edward F. Osswalt,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *Richard J. Lynch,* assistant attorney general, for the appellees (defendants).

LAVERY, C. J. The plaintiffs, Lombardi Rest Home, Inc., and Rose Lombardi, appeal from the summary judgment rendered in favor of the defendants, Gary Richter and Maria Ludena. On appeal, the plaintiffs claim that the trial court improperly granted summary judgment on the basis of their failure to allege an injury and, thus, to state a cause of action. We disagree and affirm the judgment of the trial court.

The record discloses the following facts. Lombardi Rest Home, Inc., is licensed by the department of public health as a home for the aged pursuant to General Statutes § 17a-227. Rose Lombardi, is the owner of Lombardi Rest Home, Inc. The defendants are employees of the department of social services (department). Richter is the director of the certificate of need and rate setting unit, and Ludena is a cost analyst in that unit. The plaintiffs brought this action against the defendants in their individual capacities.

In the complaint, the plaintiffs alleged that they had a property right to receive monthly payments from the department of income maintenance[1] for the care of certain patients. The method statutorily prescribed for determining a reimbursement rate is cost based. Those amounts are determined by the provisions of General Statutes (Rev. to 1993) § 17-314 (a), now 17b-340 (a), and in the regulations of the department. See Regs., Conn. State Agencies § 17-311-50 et seq.

The plaintiffs also alleged that they were denied their rights of access to the courts and to petition the government for redress of grievances in violation of the first amendment to the United States constitution when Ludena informed them that they would be paid some

[1] The department of income maintenance was renamed the department of social services effective July 1, 1993. Public Acts 1993, No. 93-262, § 1.

of the money allegedly owed to them only if they waived in writing their appeal rights related to the methods applied in computing rates for the facility. The plaintiffs refused to waive those rights.

The defendants' answer denied the material allegations of the complaint and raised several affirmative defenses, including that they were entitled to qualified immunity and therefore were immune from liability for civil damages. On April 16, 1999, the defendants filed a motion for summary judgment, claiming that there was no genuine issue of fact that the plaintiffs had failed to state a cause of action for denial of their right of access to the courts under the first amendment and that, in addition, the defendants were entitled to qualified immunity. The court granted the motion for summary judgment and, in response to the plaintiffs' motion for articulation, issued a memorandum of decision on June 28, 1999. In its memorandum, the court held that the plaintiffs had failed to state a claim for violations of their first amendment rights. The court did not reach the defendants' claim of qualified immunity. On appeal, the defendants reassert that claim.

Pursuant to § 17-314 (a), now 17b-340 (a), the department is required to establish per diem rates at which long-term care facilities are reimbursed for reasonable costs in providing room and board to their residents who qualify for assistance under a state supplementation program.[2] Facilities must annually submit audited consolidated operating reports. Regs., Conn. State Agencies § 17-311-50. Those cost reports are received by department personnel who apply the provisions of

[2] General Statutes (Rev. to 1993) § 17-314 (a), now 17b-340 (a), provides in relevant part: "The rates to be paid by or for persons aided or cared for . . . shall be determined annually . . . by the commissioner of income maintenance, to be effective July first of each year except as otherwise provided in this subsection. Such rates shall be determined on a basis of a reasonable payment for such necessary services . . . ."

the statutes and regulations to determine each facility's rate of reimbursement for qualified clients. See General Statutes (Rev. to 1993) § 17-314 (a), now 17b-340 (a). The rates are determined prospectively and are based on the allowable costs as contained in the facility's cost report.[3]

The reimbursement system under § 17-311-55 of the regulations makes provisions for establishing "interim rates" when a facility changes ownership or has a significant change in licensed bed capacity. Regs., Conn. State Agencies § 17-311-55. An interim rate is a temporary, estimated rate that is replaced when the facility files its required annual cost report at the scheduled time. If a facility fails to file a timely cost report after interim rates have been issued, the department's regulations also provide for a reduction in the facility's reimbursement rate to the lowest rate issued to a comparable facility within the same level of care until a late cost report is filed. Regs., Conn. State Agencies, § 17-311-50. General Statutes (Rev. to 1993) § 17-311 (b), now 17b-238 (b), provides for an administrative hearing process if a facility is aggrieved by a department decision in the rate setting process. If a facility is still aggrieved after the hearing, the statute provides that the facility may submit the issues to a three member arbitration panel. Section 17-311 (b), now 17b-238 (b), requires that an aggrieved facility initiate the hearing process within ten days after written notice of the rates established by the commissioner of the department of social services.

On May 3, 1993, the plaintiffs submitted to the defendants an application for the setting of the amount of the monthly payments. On the basis of that submission, the defendants determined that the plaintiffs would receive $65 per patient per day for the period of Febru-

---

[3] It can be noted that because rates are adjusted annually, the rights at issue in this case are only for the period preceding June 30, 1994.

ary 11, 1993, through June 30, 1993, and $60 per patient per day for the period of July 1, 1993, through June 30, 1994. Pursuant to § 17-311-55 of the department's regulations, the department could adjust those rates and issue a replacement rate when the facility filed a report showing actual costs.

The plaintiffs did not timely file a 1993 annual cost report showing actual costs. Consequently, the department did not issue a replacement rate for the period February 11, 1993, through June 30, 1994, until July 27, 1995. The replacement rate of $60 was replaced with a rate set at $55.65 per day in a rate letter issued August 7, 1995. The plaintiffs did not appeal to challenge the replacement rates issued on July 27, 1995, and August 7, 1995. The replacement rates were adjusted so that the department was reimbursed by the amount overpaid to Lombardi Rest Home, Inc., because of the interim rates.

The accountant for Lombardi Rest Home, Inc., Donald Siclari, arranged to meet with the department to discuss the replacement rates and amounts owed. Siclari, along with an attorney for Lombardi Rest Home, Inc., met with the defendants on September 19, 1995. The parties agreed on a rate of $58.71 per patient per day for the period of July 1, 1993, through June 30, 1994. On October 3, 1995, Ludena sent to the plaintiffs the department's standard letter memorializing the agreed upon rates, which also contained a "waiver of appeal rights." Specifically, the letter informed the plaintiffs that payment would be made if the plaintiffs would waive their appeal rights related to the methods applied in computing rates for the facility for rate periods preceding June 30, 1994. The plaintiffs did not return or respond to the letter.

The plaintiffs brought this action under 42 U.S.C. § 1983[4] against the defendants in June, 1996. The court

[4] Section 1983 of title 42 of the United States Code provides in relevant part: "Every person who, under color of any statute, ordinance, regulation,

dismissed the plaintiffs' action because of insufficient service of process. The plaintiffs then refiled the action. In granting summary judgment, the court ruled that the plaintiffs had failed to state a cause of action for violations of their first amendment rights of access to the courts and to petition for redress. This appeal followed.

## I

The plaintiffs claim that the court improperly concluded that they had failed to state a claim under the first amendment alleging a denial of their right of access to the courts.

Our standard of review is well settled. "On appeal, [w]e must decide whether the trial court erred in determining that there was no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Internal quotation marks omitted.) *Avon Meadow Condominium Assn., Inc.* v. *Bank of Boston Connecticut*, 50 Conn. App. 688, 693, 719 A.2d 66, cert. denied, 247 Conn. 946, 723 A.2d 320 (1998). Because the court rendered judgment for the defendants as a matter of law, "our review is plenary and we must decide whether [the trial court's] conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Gateway Co.* v. *DiNoia*, 232 Conn. 223, 229, 654 A.2d 342 (1995). "On appeal, however, the burden is on the opposing party to demonstrate that the trial court's decision to grant the movant's summary judgment motion was clearly erroneous." *2830 Whitney*

custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ."

*Avenue Corp.* v. *Heritage Canal Development Associates, Inc.*, 33 Conn. App. 563, 567, 636 A.2d 1377 (1994).

The court concluded that the defendants were entitled to judgment as a matter of law because the complaint lacked essential allegations that they had interfered with or hindered the plaintiffs' efforts to pursue a legal claim. The plaintiffs now assert that their complaint stated a cognizable claim of a denial of their first amendment right of access to the courts because it alleges that the defendants withheld payments in retaliation for the plaintiffs' refusal to waive their appeal rights with respect to the per diem rate to which they claim they were entitled.

The United States Supreme Court "has recognized that, embedded in the First Amendment right to 'petition the government for a redress of grievances,' is entitlement to seek recompense from the courts." *Haynesworth* v. *Miller*, 820 F.2d 1245, 1255 (D.C. Cir. 1987); see also *Cotto* v. *United Technologies Corp.*, 251 Conn. 1, 26–27, 738 A.2d 623 (1999) (*Borden, J.*, concurring and dissenting). To state a valid § 1983 claim, a plaintiff must establish that "(1) the conduct complained of was committed by a person acting under color of state law, and (2) this conduct deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States." (Internal quotation marks omitted.) *Greenwich Citizens Committee, Inc.* v. *Counties of Warren & Washington Industrial Development Agency*, 77 F.3d 26, 29–30 (2d Cir. 1996). The United States Supreme Court recently restated that "in any action under § 1983, the first step is to identify the exact contours of the underlying right said to have been violated." *County of Sacramento* v. *Lewis*, 523 U.S. 833, 841 n.5, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998). Therefore, the contours of the federal right of access to the courts must be examined.

To establish a violation of the right to access the courts, the plaintiffs must demonstrate that the alleged deprivation actually interfered with their access to the courts or prejudiced an existing action. *Hikel* v. *King*, 659 F. Sup. 337, 340 (E.D.N.Y. 1987). In addition, the plaintiffs must demonstrate that an "actual injury" resulted from the denial of access to the courts. *Lewis* v. *Casey*, 518 U.S. 343, 349, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996). The "actual injury" requirement for a denial of access to the courts is more than "just any type of frustrated legal claim." Id., 354.

Therefore, as noted by the court in its memorandum of decision, "to establish a violation of a right of access to courts, a plaintiff must demonstrate that a defendant caused actual injury . . . [that the defendant] took or was responsible for actions that hindered [a plaintiff's] efforts to pursue a legal claim . . . ." (Citations omitted; internal quotation marks omitted.) *Monsky* v. *Moraghan*, 127 F.3d 243, 247 (2d Cir. 1997), cert. denied, 525 U.S. 823, 119 S. Ct. 66, 142 L. Ed. 2d 52 (1998), quoting *Lewis* v. *Casey*, supra, 518 U.S. 349–51.

Here, the plaintiffs failed to allege an "actual injury." The gravamen of the plaintiffs' claim is that on October 3, 1995, the defendants wrote to the plaintiffs and advised them that the funds due to them would be paid if the plaintiffs waived their appeal rights related to the methods applied in computing rates for the periods before June 30, 1994. Thus, the plaintiffs claim that the defendants denied them their right of access to the courts prior to their filing an action.

The United States Court of Appeals for the Sixth Circuit has established an analysis to decide whether a violation of the right of access to the courts has occurred. "If the abuse occurs pre-filing, then the plaintiff must establish that such abuse denied her 'effective' and 'meaningful' access to the courts. . . . She can

do this only by showing that the defendants' actions foreclosed her from filing suit in state court or rendered ineffective any state court remedy she previously may have had." (Citation omitted.) *Swekel* v. *River Rouge*, 119 F.3d 1259, 1263–64 (6th Cir. 1997), cert. denied sub nom. *Swekel* v. *Harrington*, 522 U.S. 1047, 118 S. Ct. 690, 139 L. Ed. 2d 636 (1998).

Here, the letter that the defendants sent to the plaintiffs did not foreclose legal action, nor did it render ineffective any state court remedy. The letter in question merely memorialized the rates that the parties had agreed on at the September 19, 1995 meeting. The waiver of appeal rights appears to be inserted as standard language by the department because the letter referred to what they agreed to do as a settlement of the matter. It may be noted that this rate would have been set earlier if the plaintiffs had complied with the statutes and the regulations by timely filing their cost reports. In addition, the plaintiffs could have declined the settlement and exhausted their administrative remedies, which they did not do. The letter is a summary of the agreement between the parties for a rate for a specific time. It settled all of the issues between the parties for the rate periods preceding June 30, 1994, and, thus, left nothing to appeal. The court properly concluded, therefore, that the plaintiffs had failed to allege a cause of action for a violation of the right of access to the courts.

## II

In addition, the defendants raise the question of whether they are entitled to qualified immunity. "Although § 1983 on its face admits of no immunities . . . the United States Supreme Court has held that the qualified immunity defense protects government officials performing discretionary functions from liability for civil damages insofar as their conduct does not

violate clearly established statutory or constitutional rights of which a reasonable person would have known. . . . [For purposes of a § 1983 claim] [w]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the objective legal reasonableness of the action . . . assessed in light of the legal rules that were clearly established at the time it was taken." (Citations omitted; internal quotation marks omitted.) *Ham* v. *Greene*, 248 Conn. 508, 519–20, 729 A.2d 740, cert. denied, 528 U.S. 929, 120 S. Ct. 326, 145 L. Ed. 2d 254 (1999).

The doctrine that determines the tort liability of agency employees is well established. "[A public officer] . . . has a qualified immunity in the performance of a governmental duty, but he may be liable if he misperforms a ministerial act, as opposed to a discretionary act. . . . The hallmark of a discretionary act is that it requires the exercise of judgment. On the other hand, ministerial acts are performed in a prescribed manner without the exercise of judgment or discretion as to the propriety of the action. . . . [T]he determination of whether official acts or omissions are ministerial or discretionary is normally a question of fact for the fact finder . . . ." (Citations omitted; internal quotation marks omitted.) *Lombard* v. *Edward J. Peters, Jr., P.C.*, 252 Conn. 623, 628, 749 A.2d 630 (2000).

Here, the conduct complained of falls squarely within the definition of a discretionary act. A discretionary act is an act that involves the exercise of judgment and discretion. It was within the defendants' discretion, pursuant to § 17-314 (a), now § 17b-340 (a), to determine a "reasonable payment," taking into account costs of service and a variety of other factors. The statute expressly calls for the commissioner of social services to exercise discretion in the inclusion or exclusion of costs and the revision of rates. See generally General

Statutes (Rev. to 1993) § 17-314, now § 17b-340. The defendants were the individuals to whom the commissioner of social services delegated that discretion.[5] The defendants exercised their judgment in determining the rates pursuant to § 17-314, now § 17b-340, and were thus entitled to qualified immunity.

We hold, therefore, that the court properly granted summary judgment because there is adequate factual, legal and logical support in the record for its conclusion that the plaintiffs failed to allege an injury and, thus, to state a cause of action for denial of their first amendments right of access to the courts and to petition the government for redress of grievances. Additionally, we hold that the defendants' were entitled to qualified immunity.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[5] Section 17-311-12 (a) of the Regulations of Connecticut State Agencies provides: "Commissioner means the commissioner or his designated representative."