[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANTS' MOTION TO STRIKE (#111)
The defendants move to strike counts three and seven of the plaintiffs amended complaint on the ground that the plaintiff fails to allege sufficiently that the defendants engaged in unreasonable conduct in terminating her employment such as to support her claims of negligent infliction of emotional distress against the defendants. The defendants move to strike count six of the plaintiffs amended complaint on the ground that the plaintiff fails to allege sufficiently that Pangaro's conduct was extreme and outrageous such as to support her claim of intentional infliction of emotional distress against Pangaro.
On February 14, 2000, the plaintiff, Rhonda Craddock, filed a nine count amended complaint against the defendants, Church Community Supported Living Association, Inc. (ChurchCo) and Francine Pangaro, its Executive Director, seeking damages against ChurchCo for alleged racial discrimination (count one), discrimination based on a learning disability (count two), negligent infliction of emotional distress (count three), breach of an express contract (count eight) and breach of an implied contract (count nine). The plaintiff also seeks damages against Pangaro for alleged racial discrimination (count four), discrimination based on a learning disability (count five), intentional infliction of emotional distress (count six) and negligent infliction of emotional distress (count seven). CT Page 14055
The amended complaint alleges the following facts. The plaintiff is an African American female who was hired by ChurchCo as a Community Support Facilitator on or about February 1, 1996, for an hourly wage of $10 per hour. The plaintiff worked in ChurchCo's main office, which was then staffed by the Executive Director, the Program Manager and the secretary.
The plaintiff alleges that when she and a Hispanic co-employee, Judy Pratts, worked overtime, Pratts received her overtime pay immediately but that the plaintiff had to wait for her money. The plaintiff also alleges that she was actually paid at a regular rate of pay, rather than at the overtime rate. The plaintiff attributes this disparity to Pangaro's affinity towards Hispanics.
The plaintiff alleges that when the position for Program Manager opened up, Pangaro was reluctant to promote the plaintiff despite a positive written recommendation from the prior Program Manager. The plaintiff contends that Pangaro wanted to give the job to her white friend instead of to a minority such as the plaintiff. Although she was eventually promoted to Program Manager, the plaintiff did not receive a raise. Once promoted, the plaintiff alleges that she informed Pangaro that "she had been diagnosed with a learning disability which made it difficult for her to read and to spell" and that Pangaro assured her that her disability would be accommodated. (Count two, ¶ 24.)
The plaintiff alleges that after becoming Program Manager, Pangaro talked to her "on an almost daily basis about issues surrounding African-Americans" and that she made comments such as "black men only wanted to date [my] daughter because they think she has money" and "[her] father hates blacks." (Count one, ¶ 15.) The plaintiff also claims that Pangaro informed her that Pangaro's husband "would change their phone number because he did not want ChurchCo's black clients calling their house." (Count one, ¶ 15.) The plaintiff alleges that being subjected to these comments on a daily basis from March, 1997, through May, 1998, created a hostile work environment and caused her physical and mental distress prompting her to seek medical treatment.
The plaintiff alleges that she took time off from work beginning approximately on May 26, 1998, due to her physical and emotional distress. Although the plaintiff had a doctor's note, she alleges that she requested that her doctor not state therein that her illness was work related. The plaintiff alleges that, while she was sick, Panagaro called her home several times for assistance and that the plaintiff even went into work on two occasions in order to get necessary work completed. On June 5, 1998, the plaintiffs physician drafted a letter to ChurchCo CT Page 14056 explaining that the plaintiff was out of work because of work related stress.
The plaintiff alleges that she received a telephone call from a potential mortgage lender on July 2, 1998, and was informed that her mortgage application had been denied because she was currently unemployed. The plaintiff alleges that she had not been informed by the defendants of her termination but that she subsequently received a termination letter from ChurchCo.
At the time of her termination, the plaintiff claims that she was earning $12 per hour, or about $25,000 each year. The plaintiff further alleges that prior to Pangaro's accession to the position of Executive Director, the prior Executive Director earned $36,000 per year while the Program Manager earned between $22,000 and $25,000 per year. The plaintiff alleges that within one year of becoming Executive Director, Pangaro raised her own salary to $45,000 per year and raised her secretary's salary (a white female) to $32,000 per year. The plaintiff alleges that the prior Program Manager earned approximately $30,000 per year.
The plaintiff filed a nine count amended complaint on February 14, 2000, alleging that: (1) ChurchCo violated General Statutes § 46a-60
(a)(1) by treating her differently from other non-African-American employees, compensating her disparately and subjecting her to a racially hostile work environment; (2) ChurchCo violated § 46a-60 (a)(1) by Pangaro's continuing discrimination against the plaintiff on account of a learning disability and her failure to accommodate the plaintiff's disability; (3) ChurchCo is liable for damages for negligent infliction of emotional distress; (4) Pangaro violated § 46a-60 (a)(1) by treating the plaintiff differently from other non-African-American employees, providing her with disparate pay because of her race and subjecting her to a racially hostile work environment; (5) Pangaro violated § 46a-60 (a)(1) by discriminating against the plaintiff on account of a learning disability and by failing to accommodate her disability; (6) Pangaro is personally liable for intentional infliction of emotional distress; (7) Pangaro is personally liable for negligent infliction of emotional distress; (8) ChurchCo breached an express contract by violating the Personnel Policy Manual; and (9) ChurchCo breached an implied contract by violating the Personnel Policy Manual.
The plaintiff alleges that as a result of the defendants' conduct she has "suffered lost wages, lost benefits, was unable to close on her home and lost monies invested thereto," "has suffered severe emotional distress including, but not limited to, depression, sleeplessness, anxiety, frustration, and other emotional symptoms with physical CT Page 14057 manifestations," "has been forced to incur attorney's fees and costs in order to obtain the rights to which she is entitled" and has "suffered and will continue to suffer loss of wage differential, loss of income, loss of benefits, and other consequential damages." (Count one, ¶¶ 25, 26; Count six, ¶ 32; Count eight, 6 36.)
On April 5, 2000, the defendants filed a motion to strike counts three, four, five, six and seven of the plaintiffs amended complaint. The plaintiff does not object to the defendants' motion to strike counts four and five, and, therefore, the court grants the defendants' motion to strike counts four and five.
The defendants argue that counts three and seven, which allege negligent infliction of emotional distress against ChurchCo and Pangaro, respectively, must be stricken because the plaintiff fails to allege any basis upon which relief may be granted. The defendant further argues that count six, which alleges intentional infliction of emotional distress against Pangaro, must be stricken.
As required by Practice Book § 10-42, the defendants filed a memorandum in support of their motion to strike, and the plaintiff filed a timely memorandum in opposition. The defendants also filed a supplemental memorandum in support of their motion to strike.
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaints . . . to state a claim upon which relief can be granted." (Internal quotation marks omitted.)Peter-Michael, Inc. v. Sea Shell Associates, 244 Conn. 269, 270,709 A.2d 558 (1998). The role of the trial court in ruling on a motion to strike is "to examine the [complaint], construed in favor of the plaintiffs, to determine whether the [pleading party has] stated a legally sufficient cause of action." (Internal quotation marks omitted.) Dodd v.Middlesex Mutual Assurance Co., 242 Conn. 375, 378, 698 A.2d 859 (1997). "In ruling on a motion to strike, the court is limited to the facts alleged in the complaint." (Internal quotation marks omitted.) Waters v.Autuori, 236 Conn. 820, 825, 676 A.2d 357 (1996). "The court must construe the facts in the complaint most favorably to the plaintiff." (Internal quotation marks omitted.) Faulkner v. United TechnologiesCorp., 240 Conn. 576, 580, 693 A.2d 293 (1997). "[I]f facts provable in the complaint would support a cause of action, the motion to strike must be denied." (Internal quotation marks omitted.) Lombard v. Edward J.Peters. Jr., P.C., 252 Conn. 623, 626, 749 A.2d 630 (2000).
 Counts Three and Seven
The defendants first argue that the plaintiff fails to allege CT Page 14058 sufficiently that the defendants engaged in unreasonable conduct during the termination process. The plaintiff argues that the unreasonable conduct which forms the basis for a claim of negligent infliction of emotional distress may occur at any time during the employment relationship and is not limited to the termination process.
"[I]n order to state [a claim for negligent infliction of emotional distress], the plaintiff has the burden of pleading that the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that distress, if it were caused, might result in illness or bodily harm. . . . Accordingly, negligent infliction of emotional distress in the employment context arises only where it is based upon unreasonable conduct of the defendant in the termination process. . . . The mere termination of employment, even where it is wrongful, is therefore not, by itself; enough to sustain a claim for negligent infliction of emotional distress. The mere act of firing an employee, even if wrongfully motivated, does not transgress the bounds of socially tolerable behavior." (Citations omitted; internal quotation marks omitted.) Parsons v. United Technologies Corp., 243 Conn. 66,88-89, 700 A.2d 655 (1997). "Very few courts have addressed the requirements of a claim for negligent infliction of emotional distress within the context of an employment relationship as a whole, much less in the context of the termination of such a relationship." Id., 89.
"Prior to July 1, 1993, an employee could not bring a cause of action for negligent infliction of emotional distress against an employer except for distress caused during the termination process since "on-the-job sufferings' were compensable under the Connecticut Workers' Compensation Act." Karanda v. Pratt Whitney Aircraft, Superior Court, judicial district of Hartford, Docket No. 582025 (May 10, 1999, Hale, J.) (24 Conn.L.Rptr. 521, 524). "With the passage of [No. 93-228 of the 1993 Public Acts], Connecticut excluded mental and emotional impairment from the definition of "personal injury' in the Workers' Compensation Act. . . . This change led some courts to conclude that . . . the Workers' Compensation Act does not bar negligent infliction of emotional distress claims incurred after July 1, 1993." (Citations omitted; internal quotation marks omitted.) Id.
"Both the Supreme Court and the Appellate Court have stated the rule that negligent infliction of emotional distress in the workplace only applies in the termination context. See Parsons v. United TechnologiesCorp., supra, 243 Conn. 88-89; Pavliscak v. Bridgeport Hospital, [48 Conn. App. 580, 597, 711 A.2d 747, cert denied, 245 Conn. 911,718 A.2d 17 (1998)]. This rule has, however, been stated only in cases involving a termination." Karanda v. Pratt Whitney Aircraft, supra,24 Conn.L.Rptr. 523. "The Connecticut Supreme Court and Appellate Court have CT Page 14059 not addressed a claim of negligent infliction of emotional distress when no termination is alleged." Id. "Failing to recognize a cause of action for negligent infliction of emotional distress in the non-termination employment context would lead to the anomalous result of precluding an employee from receiving compensation for emotional distress suffered at the hands of employers; compensation that was certainly available under the Workers' Compensation Act prior to P.A. 93-228." Id., 524.
Absent any determinative authority from the Supreme Court or Appellate Court, several Superior Court decisions, including decisions of this court, have held that actions for negligent infliction of emotional distress may be maintained absent a termination. See, e.g., Harrop v.Allied Printing Services, Inc., Superior Court, judicial district of Hartford, Docket No. 583561 (March 23, 2000, Hennessey, J.); Benson v.Northeast Utility, Superior Court, judicial district of Hartford, Docket No. 589697 (January 20, 2000, Hennessey, J.) (no termination necessary for actions alleging unintentional infliction of emotional distress);Hankard v. Avon, Superior Court, judicial district of Hartford, Docket No. 565611 (June 22, 1999, Hale, J.) (claims alleging negligent infliction of emotional distress permissible even where there is no termination); Karanda v. Pratt Whitney Aircraft, supra,24 Conn.L.Rptr. 524. But see Drollette v. Harborside Healthcare Corp., Superior Court, judicial district of New Haven at Meriden, Docket No. 266417 (August 9, 1999, Beach, J.).
Although the plaintiff in the present case was ultimately terminated, her negligent infliction of emotional distress claim is not based solely on the event of her termination but includes all of the actions directed towards her during her employment and during the termination process. For this reason, Parsons v. United Technologies Corp., supra, 243 Conn. 66, is distinguishable from the present action. Accordingly, the defendants' motion to strike counts three and seven on this basis is denied.
The defendants also argue that counts three and seven should be stricken because the plaintiff fails to allege conduct that is unreasonable. Viewing the complaint in a light most favorable to the plaintiff; we find that the plaintiff has sufficiently alleged that the defendants' conduct involved an unreasonable risk of causing emotional distress and that distress might result in illness or bodily harm. SeeParsons v. United Technologies Corp., supra, 243 Conn. 88. Accordingly, the defendants' motion to strike counts three and seven on this basis is denied.
 Count Six
The defendants argue that count six of the plaintiffs amended complaint CT Page 14060 alleging intentional infliction of emotional distress against Pangaro is legally insufficient because the plaintiff fails to allege sufficiently that Pangaro's conduct was extreme and outrageous. The plaintiff argues that the defendants' motion to strike count six must be denied because the plaintiffs cumulative allegations of overt and repeated discrimination, disparate treatment and disregard for the plaintiffs medical leave are sufficiently extreme and outrageous to support a claim for intentional infliction of emotional distress.
"In order for the plaintiff to prevail in a case for liability under . . . [intentional infliction of emotional distress], four elements must be established. It must be shown: (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiffs distress; and (4) that the emotional distress sustained by the plaintiff was severe." (Internal quotation marks omitted.) Appletonv. Board of Education, 254 Conn. 205, 210, 757 A.2d 1059 (2000). "All four elements must be established to prevail on a claim for intentional infliction of emotional distress." Muniz v. Kravis, 59 Conn. App. 704,708-09, 757 A.2d 1207 (2000). "Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine. Bell v. Board ofEducation, 55 Conn. App. 400, 410, 739 A.2d 321 (1999). Only where reasonable minds disagree does it become an issue for the jury." Appletonv. Board of Education, supra, 254 Conn. 210.
"Liability for intentional infliction of emotional distress requires conduct that exceeds all bounds usually tolerated by decent society. . . . Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!" . . . Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress." (Citations omitted; internal quotation marks omitted.) Appleton v. Board of Education, supra, 254 Conn. 210-11.
"A review of recent Connecticut decisions on the issue of extreme and outrageous conduct within the context of a claim for intentional infliction of emotional distress reveals that there is no bright line rule to determine what constitutes extreme and outrageous conduct sufficient to maintain this action. The court looks to the specific facts CT Page 14061 and circumstances of each case in making its decisions." Nwachukwu v.State Department of Labor, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 573595 (March 4, 1998,Hennessey, J.).
This court finds that reasonable people could disagree as to whether the facts alleged by the plaintiff satisfy the extreme and outrageous requirement for intentional infliction of emotional distress. The court must construe the complaint in favor of sustaining its legal sufficiency, and, therefore, the motion to strike count six of the plaintiffs amended complaint is denied.
Hennessey, J.