JAMES R. LOMBARD ET AL. *v.* EDWARD J.
PETERS, JR., P.C., ET AL.
(SC 16162)

Borden, Norcott, Katz, Palmer and Callahan, Js.

Argued December 1, 1999—officially released April 4, 2000

*Paul H. D. Stoughton*, for the appellants (plaintiffs).

*Louis A. Annecchino IV*, for the appellee (named defendant).

*Opinion*

CALLAHAN, J. This is an appeal from a judgment of the trial court granting the motion by the named defendant, Edward J. Peters, Jr., P.C.,[1] to strike the first count of the plaintiffs' complaint on the ground of qualified immunity. The question presented by the appeal is whether a committee appointed by a court to conduct a foreclosure sale is entitled to qualified immunity for negligently identifying certain real estate

---

[1] The plaintiffs' complaint names both Edward J. Peters, Jr., P.C., and Meadows Condominium of Middletown Association, Inc., as defendants. This appeal concerns only Edward J. Peters, Jr., P.C., and unless otherwise indicated, references to the defendant are to Edward J. Peters, Jr., P.C., only.

as being part of the property included in the sale. We answer that question in the negative.

The relevant facts and procedural history are as follows. The Superior Court appointed the defendant as the committee to conduct a foreclosure sale of certain condominium units located in a common interest community in Middletown called Meadows Condominium. The Federal Deposit Insurance Corporation (FDIC) was the successful bidder at the foreclosure sale and purchased the foreclosed property. The defendant conveyed the foreclosed property to the FDIC by a committee deed, which accurately described the foreclosed property purchased by the FDIC. After the sale had been approved by the court, the defendant orally incorrectly identified a garage unit owned by the plaintiffs, James R. Lombard and Lombard Associates, Inc., as being part of the property that had been foreclosed by the lienholder and purchased by the FDIC. In actuality, the plaintiffs' garage unit had been neither foreclosed nor subject to any foreclosure or sale. The FDIC, having been so misled, thereafter entered the plaintiffs' garage unit and took possession of and sold certain personal property of the plaintiffs that was stored therein. The stored personal property consisted of business equipment, books and records. The plaintiffs have received only partial relief from the FDIC for the loss of their property.

The plaintiffs filed this four count complaint against the defendant and Meadows Condominium of Middletown Association, Inc. This appeal concerns only the trial court's granting of the defendant's motion to strike the first count of the complaint, which alleged that the defendant erroneously and negligently had represented to the FDIC that the plaintiffs' garage unit was part of

the foreclosed property purchased by the FDIC.[2] The trial court concluded that the defendant's misidentification of the garage unit was a discretionary act and that the defendant, as the court-appointed committee, was shielded from liability for discretionary acts by qualified immunity, in the absence of any allegations of malice or intent. The trial court, therefore, granted the defendant's motion to strike the first count of the complaint and rendered a partial judgment in favor of the defendant. This appeal followed.[3]

"In an appeal from a judgment granting a motion to strike, we operate in accordance with well established rules. Because a motion to strike challenges the legal sufficiency of a pleading and, consequently, requires no factual findings by the trial court, our review of the court's ruling on the defendant['s] motions is plenary. See *Napoletano* v. *CIGNA Healthcare of Connecticut, Inc.*, 238 Conn. 216, 232–33, 680 A.2d 127 (1996) [cert. denied, 520 U.S. 1103, 117 S. Ct. 1106, 137 L. Ed. 2d 308 (1997)]. . . . [W]e take the facts to be those alleged in the complaint that has been stricken and we construe the complaint in the manner most favorable to sustaining its legal sufficiency. *Bohan* v. *Last*, 236 Conn. 670, 674, 674 A.2d 839 (1996); see also *Mingachos* v. *CBS, Inc.*, 196 Conn. 91, 108–109, 491 A.2d 368 (1985). Thus, [i]f facts provable in the complaint would support a cause of action, the motion to strike must be denied. *Waters* v. *Autuori*, 236 Conn. 820, 826, 676 A.2d 357 (1996). Moreover, we note that [w]hat is necessarily implied [in an allegation] need not be expressly alleged.

[2] The court also granted the defendant's motion to strike with respect to count three, which alleged conversion by the defendant. The plaintiffs do not appeal from the judgment involving that portion of the court's decision. Counts two and four allege claims against Meadows Condominium of Middletown Association, Inc., and are not at issue here.

[3] The plaintiffs appealed from the judgment to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

*Clohessy* v. *Bachelor*, 237 Conn. 31, 33 n.4, 675 A.2d 852 (1996)." (Internal quotation marks omitted.) *Pamela B.* v. *Ment*, 244 Conn. 296, 307–308, 709 A.2d 1089 (1998).

I

The plaintiffs claim that the trial court improperly granted the defendant's motion to strike on the basis of that court's determination that the defendant had qualified immunity. The plaintiffs' argument is two-pronged. First, they argue that the defendant was not acting in the capacity of a committee when the defendant incorrectly identified the plaintiffs' property and, therefore, may not invoke any immunity that might apply to that office. Second, the plaintiffs contend that even if the defendant was acting as a committee, the defendant's misidentification was a ministerial rather than a discretionary act and, thus, qualified immunity does not apply.

A

The plaintiffs' complaint does not allege that the defendant was acting other than in the capacity of a committee when the defendant misidentified their property. Moreover, the plaintiffs never argued that point to the trial court at the hearing on the defendant's motion to strike. Because the plaintiffs' claim that the defendant was not acting as a committee and therefore did not have qualified immunity was not properly raised before the trial court, we decline to address it now. Practice Book § 60-5; *Chaplin* v. *Balkus*, 189 Conn. 445, 447, 456 A.2d 286 (1983).

B

The plaintiffs next argue that, even if the defendant acted in the capacity of a committee, the defendant's action in misidentifying the foreclosed property was ministerial in nature and as such was not protected by qualified immunity. The defendant, on the other hand,

argues that, because the negligence claim "calls into question the standard of care of a Committee (a claim implicating one's judgment or more aptly discretion), the claim alleged is subject to qualified immunity." We agree with the plaintiffs.

"[A public officer] . . . has a qualified immunity in the performance of a governmental duty, but he may be liable if he misperforms a ministerial act, as opposed to a discretionary act." (Internal quotation marks omitted.) *Evon* v. *Andrews*, 211 Conn. 501, 505, 559 A.2d 1131 (1989). The hallmark of a discretionary act is that it requires the exercise of judgment. "On the other hand, ministerial acts are performed in a prescribed manner without the exercise of judgment or discretion as to the propriety of the action." (Internal quotation marks omitted.) *Gordon* v. *Bridgeport Housing Authority*, 208 Conn. 161, 167–68, 544 A.2d 1185 (1988); *Kolaniak* v. *Board of Education*, 28 Conn. App. 277, 280–81, 610 A.2d 193 (1992). Although the determination of whether official acts or omissions are ministerial or discretionary is normally a question of fact for the fact finder; *Gordon* v. *Bridgeport Housing Authority*, supra, 165; there are cases where it is apparent from the complaint. See *Evon* v. *Andrews*, supra, 505–507.

The primary function of the committee is to conduct the judicial sale. See General Statutes § 49-25. This, of course, may include advertising the sale, erecting a sign on the property, identifying the property, conducting the sale and ultimately presenting a report to the court whose approval is required and will cure the process of any defects or irregularities. See *Raymond* v. *Gilman*, 111 Conn. 605, 613, 151 A. 248 (1930).

Although the duties of a committee for sale are delineated by the court, the committee may exercise its discretion in performing certain of its tasks. For instance, a committee for sale may determine the size of the

advertisements published in newspapers; see D. Caron, Connecticut Foreclosures (3d Ed. 1997) § 6.01D, p. 172; and the proper time to commence the foreclosure sale. *Dime Savings Bank of New York* v. *Grisel*, 36 Conn. App. 313, 321, 650 A.2d 1246 (1994) (committee had discretion to begin auction at appointed hour although plaintiff's attorney not yet present, and to refuse request to reopen bidding); *Jefferson* v. *Karpowicz*, 10 Conn. App. 198, 200, 522 A.2d 322 (1987) (committee for partition sale had discretion to begin auction ten to thirty minutes after appointed hour). There are, of course, limits to a committee's discretion. See, e.g., *In re Robert C. Lohnes*, United States Bankruptcy Court, Case No. 5-82-01267 (D. Conn. January 29, 1983) (9 Conn. L., Trib., No. 7, February 14, 1983) (committee has no immunity from civil contempt for conducting sale after bankruptcy petition filed in violation of automatic stay because act of conducting sale itself is ministerial). Because "the person appointed to make the sale [i.e., the committee] is the mere agent of the court"; *Raymond* v. *Gilman*, supra, 111 Conn. 613; whatever discretion the committee may have certainly cannot extend to selling property or representing as foreclosed property a garage unit that the court had not authorized the committee to sell.

The defendant argues that its action must be discretionary, because the plaintiffs' complaint alleges that the defendant's misidentification of the property violated the standard of care of an attorney in real estate matters. The defendant essentially argues that conformance to a standard of care requires exercising judgment on one's part, which in turn must mean that the act is discretionary rather than ministerial. Contrary to the defendant's assertion, the plaintiffs' reference to a standard of care in the negligence count of their complaint does not necessarily implicate discretion. In those instances where the language of a complaint is

dispositive as to whether an act is discretionary or ministerial, it is because of the nature of the act alleged rather than the theory of liability relied upon. See *Evon* v. *Andrews*, supra, 211 Conn. 505.

The defendant's misidentification of the plaintiffs' property did not involve any exercise of judgment or discretion. A committee's discretion extends only to the committee's judgment as to how to carry out a sale. A committee does not have the discretion to sell, or identify as sold, property not authorized by the court to be sold. For example, the committee may have discretion as to how it advertises an authorized sale but not to advertise the wrong property. Here, part of the defendant committee's job was to identify properly the foreclosed property to the purchaser. Instead, it misidentified the plaintiffs' property as having been foreclosed. It would be incongruous to suggest that the defendant had the discretion to identify as sold, property that it had no authority to sell when it was authorized by the court to sell only certain specified property. We conclude that a postsale identification of property that was not part of the foreclosure is not a discretionary act but is a ministerial act not entitled to qualified immunity.

II

The defendant suggests as an alternative ground for affirmance that it was entitled to absolute judicial immunity. We disagree.

It is a long-standing doctrine that a judge may not be civilly sued for judicial acts he undertakes in his capacity as a judge. The rationale is that a judge must be free to exercise his judicial duties without fear of reprisal, annoyance or incurring personal liability. See *Phelps* v. *Sill*, 1 Day (Conn.) 315, 329 (1804); see also *Antoine* v. *Byers & Anderson, Inc.*, 508 U.S. 429, 435, 113 S. Ct. 2167, 124 L. Ed. 2d 391 (1993).

"Absolute immunity, however, is strong medicine
. . . . *Forrester* v. *White*, [484 U.S. 219, 230, 108 S. Ct.
538, 98 L. Ed. 2d 555 (1988)], quoting *Forrester* v. *White*,
792 F.2d 647, 660 (7th Cir. 1986) (Posner, J., dissenting).
. . . The presumption is that qualified rather than abso-
lute immunity is sufficient to protect government offi-
cials in the exercise of their duties. *Burns* v. *Reed*, [500
U.S. 478, 486–87, 111 S. Ct. 1934, 114 L. Ed. 2d 547
(1991)]; see also *Malley* v. *Briggs*, [475 U.S. 335, 340,
106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986)]; *Harlow* v.
*Fitzgerald*, 457 U.S. 800, 807, 102 S. Ct. 2727, 73 L. Ed.
2d 396 (1982)." (Citations omitted; internal quotation
marks omitted.) *DeLaurentis* v. *New Haven*, 220 Conn.
225, 242–43, 597 A.2d 807 (1991).

The officers to whom the absolute protection of judi-
cial immunity extends is limited. This fact reflects an
"[awareness] of the salutary effects that the threat of
liability can have . . . as well as the undeniable tension
between official immunities and the ideal of the rule
of law . . . ." *Forrester* v. *White*, supra, 484 U.S. 223.
The protection extends only to those who are intimately
involved in the judicial process, including judges, prose-
cutors and judges' law clerks. Absolute judicial immu-
nity, however, does not extend to every officer of the
judicial system. See *Oliva* v. *Heller*, 839 F.2d 37, 40 (2d
Cir. 1988) (absolute judicial immunity applies to law
clerks but not court clerks); *Spring* v. *Constantino*,
168 Conn. 563, 566–67, 362 A.2d 871 (1975) (absolute
immunity that protects prosecutors does not protect
public defenders). Moreover, it is important to note
that even judges do not enjoy absolute immunity for
administrative as opposed to judicial actions. *Forrester*
v. *White*, supra, 484 U.S. 229–30. The determination is
made using a "functional approach."[4] *Clinton* v. *Jones*,

_____

[4] A functional approach assumes that "[i]mmunity flows not from rank
or title or location within the Government . . . but from the nature of
the responsibilities of the individual official." (Internal quotation marks
omitted.) *Richardson* v. *McKnight*, 521 U.S. 399, 416, 117 S. Ct. 2100, 138
L. Ed. 2d 546 (1997). It requires "[examining] the nature of the functions

520 U.S. 681, 694–95, 117 S. Ct. 1636, 137 L. Ed. 2d 945 (1997); W. Prosser & W. Keeton, Torts (5th Ed. 1984) § 132, p. 1057 (functional approach is "dominant approach"). "[I]mmunities are grounded in 'the nature of the function performed, not the identity of the actor who performed it.' " *Clinton* v. *Jones*, supra, 695.

Although a committee may exercise discretion in certain of its duties, its function is more administrative than judicial in nature. A committee does not have the authority to undertake selectively certain types of activities as opposed to others; the committee carries out the mandate of the court, albeit at times using its discretion as to the method of effectuating that mandate. The committee's sphere of activity is circumscribed by the statute pursuant to which the committee is appointed, by the order of the court vesting authority in the committee and by the committee's function itself. None of a committee's activities are adjudicative. Moreover, a committee is not left unprotected; a committee is shielded from liability by qualified immunity when performing discretionary acts undertaken without malice. In light of these considerations, it would be unwise to extend absolute immunity to a committee appointed to conduct a foreclosure sale.

III

The defendant argues as a second alternative basis for affirmance that it owed no duty to the plaintiffs. We disagree.

"Duty is a legal conclusion about relationships between individuals, made after the fact, and imperative to a negligence cause of action. The nature of the duty,

with which a particular official or class of officials has been lawfully entrusted, and [seeking] to evaluate the effect that exposure to particular forms of liability would likely have on the appropriate exercise of those functions." (Internal quotation marks omitted.) Id.

and the specific persons to whom it is owed, are determined by the circumstances surrounding the conduct of the individual. . . . Although it has been said that no universal test for [duty] ever has been formulated . . . our threshold inquiry has always been whether the specific harm alleged by the plaintiff was foreseeable to the defendant. The ultimate test of the existence of the duty to use care is found in the foreseeability that harm may result if it is not exercised. . . . By that is not meant that one charged with negligence must be found actually to have foreseen the probability of harm or that the particular injury which resulted was foreseeable, but the test is, would the ordinary [person] in the defendant's position, knowing what he knew or should have known, anticipate that harm of the general nature of that suffered was likely to result? . . .

"A simple conclusion that the harm to the plaintiff was foreseeable, however, cannot by itself mandate a determination that a legal duty exists. Many harms are quite literally foreseeable, yet for pragmatic reasons, no recovery is allowed. . . . A further inquiry must be made, for we recognize that duty is not sacrosanct in itself, but is only an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection. . . . While it may seem that there should be a remedy for every wrong, this is an ideal limited perforce by the realities of this world. Every injury has ramifying consequences, like the ripplings of the waters, without end. The problem for the law is to limit the legal consequences of wrongs to a controllable degree. . . . The final step in the duty inquiry, then, is to make a determination of the fundamental policy of the law, as to whether the defendant's responsibility should extend to such results. . . . *RK Constructors, Inc.* v. *Fusco Corp.*, 231 Conn. 381, 385–86, 650 A.2d 153 (1994)." (Internal

quotation marks omitted.) *Clohessy* v. *Bachelor*, supra, 237 Conn. 45–46.

Although both the plaintiffs' and the defendant's arguments frame the discussion in terms of attorney malpractice, we do not believe that this is a malpractice claim. The claim is more accurately characterized as a claim of ordinary negligence to which, in the words of the complaint, the heightened standard of care "ordinarily exercised by attorneys in real estate matters" must be applied.

The defendant, although an attorney, was acting in the role of a committee for a foreclosure sale. A committee has no "client" to whom an exclusive duty is owed; instead, the committee deals with the world at large at the behest of the court. More importantly, it was clearly foreseeable that the plaintiffs would be harmed by the defendant's negligent misidentification of the plaintiffs' property as having been included in the foreclosure sale. Finally, we do not believe that a significant chilling effect will result from our recognition of a duty to perform properly acts that require no exercise of judgment. We, therefore, conclude that the defendant owed the plaintiffs a duty not to misidentify their garage as having been sold to the FDIC, an error that, the plaintiffs allege, led to the loss of their personal property.

The judgment is reversed and the case is remanded with direction to deny the motion to strike the first count of the plaintiffs' complaint and for further proceedings according to law.

In this opinion the other justices concurred.