[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON THE MOTION TO DISMISS FILED BY THE DEFENDANTS JOSEPH GORMLEY AND DAVID SKOLNICK I STATEMENT OF THE CASE
On May 21, 2001, the plaintiff, Henry Berry, filed a complaint against several defendants, including Judge Joseph Gormley and Judge David Skolnick.[1] The plaintiff alleges in the first count that, while presiding over the trial of Berry v. Knight, another case in which the CT Page 15596 plaintiff was a party, Judge Gormley engaged in certain conduct which denied the plaintiff due process and a fair trial. Specifically, the plaintiff alleges that this conduct involved: failure to disclose his relationship and improper contact with the attorney of the opposing party and with a witness called by the defendants; improper contact with a witness named by the plaintiff; improper investigation of the plaintiff's case; and failure to maintain the appearance of impartiality.
In the fifth count, the plaintiff claims that Judge Gormley and attorneys James Gaston and Anita Varunes, who represented other parties to the action, conspired to deny the plaintiff due process because they: had improper ex parte contacts with each other; had improper communications with each other by letter concerning matters at issue in the trial, failed to notify the plaintiff of their contacts and communications; and engaged in activities giving the defendant an unfair advantage at trial.
In the second count, the plaintiff alleges that, while presiding over the trial of Berry v. McBroom, another case in which the plaintiff was a party, Judge Skolnick violated General Statutes § 51-39 by failing to disclose his relationship with Dr. Staub, a witness named by the plaintiff, and that as a result, the plaintiff was denied due process and a fair trial.
In his memorandum in opposition to the motion to dismiss, the plaintiff explains that his "allegations assert the defendant judges did not respect and comply with the law by their violation of CT Gen. Statute § 51-39." In his demand for relief, the plaintiff requests monetary damages, costs, interest and attorney's fees.
On June 20, 2001, the defendants filed a motion to dismiss, supported by a memorandum of law, pursuant to Practice Book §§ 10-30 and 10-31
(a). The defendants argue that the court lacks subject matter jurisdiction because the claims against them are barred by the doctrines of sovereign and judicial immunity. On July 31, 2001, the plaintiff filed a memorandum of law in opposition to the motion to dismiss, accompanied by a supporting affidavit, pursuant to Practice Book § 10-31(b).
 II A STANDARD OF REVIEW
"A motion to dismiss properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and CT Page 15597 fact state a cause of action that should be heard by the court." (Emphasis in original; internal quotation marks omitted.) Capers v. Lee,239 Conn. 265, 282, 684 A.2d 696 (1996). "The motion to dismiss shall be used to assert . . . lack of jurisdiction over the subject matter." Practice Book § 10-31(a)(1). "A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction." Upson v. State, 190 Conn. 622, 624, 461 A.2d 991 (1983). "A motion to dismiss admits all facts well pleaded and invokes any record that accompanies the motion, including supporting affidavits that contain undisputed facts." (Internal quotation marks omitted.) Coughlin v.Waterbury, 61 Conn. App. 310, 314, 763 A.2d 1058 (2001).
"[T]he doctrine of sovereign immunity implicates subject matter jurisdiction and is therefore a basis for granting a motion to dismiss." (Internal quotation marks omitted.) Federal Deposit Ins. Corp. v.Peabody, N.E., Inc., 239 Conn. 93, 99, 680 A.2d 1321 (1996). "In ruling upon whether a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader." Pamela B. v. Ment, 244 Conn. 296, 308,709 A.2d 1089 (1998).
Although there is no definitive authority on this point from our appellate courts, judicial immunity, as compared to sovereign immunity, does not appear to implicate this court's subject matter jurisdiction. Consequently, a motion to strike, rather than the instant motion. to dismiss, appears to be the more appropriate procedural mechanism to assert judicial immunity. In any event, the Supreme Court has held that the trial court has discretion in certain cases to treat a motion to dismiss as a motion to strike, and that treatment is particularly appropriate here. McCutcheon Burr, Inc. v. Berman, 218 Conn. 512, 527,590 A.2d 438 (1991). The parties have fully briefed and argued the issue and the matter is fully joined for disposition. The plaintiff has not objected to the court's consideration of the judicial immunity issue by way of the motion to dismiss. A significant difference between a motion to strike as compared to a motion to dismiss is that the plaintiff would have a right to file a revised pleading after the granting of a motion to strike, which is not available after the granting of a motion to dismiss. See Practice Book § 10-44. However, judicial immunity is an exemption from suit altogether, and is not a mere pleading defect or some exemption from liability which may ordinarily be corrected by the filing of a new pleading. See generally, McCutcheon Burr, Inc. v. Berman,
supra, 218 Conn. 526.
 B CT Page 15598 DISCUSSION
The defendants argue that the plaintiff's claims against them are barred by the doctrines of sovereign immunity and absolute judicial immunity. The court agrees that the doctrine of judicial immunity bars plaintiff's claims and grants the motion to dismiss on this ground.
"It is a long-standing doctrine that a judge may not be civilly sued for judicial acts he undertakes in his capacity as a judge. The rationale is that a judge must be free to exercise his judicial duties without fear of reprisal, annoyance or incurring personal liability." Lombard v.Edward J. Peters, Jr., P.C., 252 Conn. 623, 630, 749 A.2d 630 (2000). The plaintiff expressly alleges in the first, second and fifth counts that the defendants were presiding at the respective trials at issue when the alleged conduct took place. Thus, the plaintiff has not alleged that the defendants were acting in a capacity other than that of a presiding judge. See generally, Forrester v. White, 484 U.S. 219, 227,98 L.Ed.2d 555,108 S.Ct. 538 (1988) (recognizing that there exists "an intelligible distinction between judicial acts and the administrative, legislative, or executive functions that judges may on occasion be assigned by law to perform"); Lombard v. Edward J. Peters, Jr., P.C., supra, 252 Conn. 631
("judges do not enjoy absolute immunity for administrative as opposed to judicial actions.")
The plaintiff's argument in his memorandum that the defendants are being sued in their "individual" capacities is immaterial. The nature of the allegations of the complaint makes it clear and undisputable that the plaintiff's grievances are based on and arise from actions taken by the defendants in their capacity as the judges presiding over lawsuits involving the plaintiff. See generally, Martin v. Brady, 64 Conn. App. 433,437-38, ___ A.2d ___ (2001) (in the absence of any allegation other than the specific claim that the defendants acted in their official capacity, "the form in which the plaintiff cited the defendants does not matter"). In short, because the plaintiff is complaining about acts that were performed by the defendants in their capacity as judges, the doctrine of absolute judicial immunity applies to bar plaintiff's claims against Judge Gormley and Judge Skolnick.[2]
The plaintiff argues that the claims are not barred by judicial immunity because this doctrine does not apply to alleged violations of § 51-39, or allegations of intentional, wanton, reckless and malicious violations of the code of judicial conduct.
First, as a preliminary matter, General Statute § 51-39 requires a judge to recuse himself from a case if he has a particular relationship with the parties or subject matter as is specifically described in the CT Page 15599 statute. This statute obviously is not exhaustive of the situations requiring a judge to recuse himself, but the allegations of the complaint here do not even allege that the defendants failed to recuse themselves because of the existence or presence of any of the relationships specifically delineated in § 51-39. Consequently, § 51-39 is simply inapplicable here and has no relevance to the issues before the court.[3] Additionally, even if § 51-39 were applicable, the statute does not create a private right of action for its violation. The plaintiff has cited and the court has located no authority to support his contention that a violation of this statute operates to obviate the application of the judicial immunity doctrine.
The plaintiff also attempts to overcome the judicial immunity bar by contending that the defendants' conduct was intentional, wanton, reckless and malicious. First, the court finds that the plaintiff has not alleged in the complaint that the defendants' conduct was wanton, reckless, or malicious. He only argues in his memorandum that his allegations imply such conduct and that such conduct would make judicial immunity inapplicable. However, the factual issues of a case are raised and joined by the allegations of the pleadings, not generalized arguments asserted in a party's memorandum.
In addition, however, the law is well-established that, "judicial immunity is an immunity from suit, not just from ultimate assessment of damages. . . . Accordingly, judicial immunity is not overcome by allegations of bad faith or malice. . . ." Mireles v. Waco, 502 U.S. 9,11, 116 L.Ed.2d 9, 112 S.Ct. 286 (1991); Pierson v. Ray, 386 U.S. 547,554, 18 L.Ed.2d 288, 87 S.Ct. 1213 (1967) ("immunity applies even when the judge is accused of acting maliciously and corruptly"). "This immunity . . . is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the [judge] should be at liberty to exercise [his] functions with independence and without fear of consequences. . . . His errors may be corrected on appeal, but he should not have to fear that unsatisfied litigants may hound him with litigation charging malice or corruption. Imposing such a burden on judges would contribute not to principled and fearless decision-making but to intimidation." (Citations omitted; internal quotation marks omitted.) Pierson v. Ray, supra, 386 U.S. 554. Judicial immunity applies unless the conduct "is so far outside the normal scope of judicial functions that the judge was in effect not acting as a judge"; Shay v. Rossi, 253 Conn. 134, 170, 749 A.2d 1147
(2000); and it is clear from the allegations of the complaint that the alleged actions at issue do not fall so far from the scope of judicial functions that the defendants were not acting as judges.
If any errors were committed by Judges Gormley and Skolnick, the CT Page 15600 plaintiff had the opportunity to raise the issue of disqualification during the trials,[4] to preserve any errors, and file an appeal. Moreover, even in the absence of this opportunity, he still had the recourse to pursue judicial disciplinary proceedings. The United States Supreme Court, in discussing the policies behind the doctrine of judicial immunity and the reasons for disallowing collateral civil proceedings against judges, has explained that "[d]uring the early medieval period, there was no such thing as an appeal from court to court. Judges were not immune from suits attacking their judicial acts, and the common procedure for challenging a judicial ruling was to file a complaint of `false judgment' against the judge. . . . To protect the finality and authoritativeness of its decisions from collateral attack in . . . competing courts, the King's Bench [introduced] the idea of appellate procedure. . . . To ensure this procedure, it was necessary to immunize the judicial acts of common-law judges from collateral attack — hence the doctrine of judicial immunity." (Citations omitted.) Pulliam v. Allen,466 U.S. 522, 546 n. 5, 80 L.Ed.2d 565, 104 S.Ct. 1970 (1984).
"A long line of [the United States Supreme Court's] precedents acknowledges that, generally, a judge is immune from a suit for money damages. . . . Although unfairness and injustice to a litigant may result on occasion, it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself" (Citations omitted.) Mireles v. Waco, supra, 502 U.S. 9-10.
Therefore, the plaintiff may not collaterally attack the outcome of a case or the issues raised in it by instituting an action against the presiding judge, particularly when he had an opportunity to raise the issues during the trial, and take an appeal from any adverse decision. Otherwise, this "would result in a trial by ambuscade of the trial judge. . . . We have repeatedly indicated our disfavor with the failure, whether because of a mistake of law, inattention or design, to object to errors occurring in the course of a trial until it is too late for them to be corrected. . . ." (Citations omitted; internal quotation marks omitted.) Simmons v. Simmons, 244 Conn. 158, 187, 708 A.2d 949 (1998).
Because the court finds that the defendants are immune from suit on the basis of the doctrine of absolute judicial immunity, the court will not address the defendants' arguments that sovereign immunity also bars this action.
 III CONCLUSION CT Page 15601
The defendants' motion to dismiss is granted, because the claims against them are barred by the doctrine of judicial immunity.
Dated this 20th day of November 2001.
STEVENS, J.