Jose **GALINDEZ**, plaintiff,

v.

Martin **MILLER** and City of Hartford, defendants.

No. 3:01cv1337 (JBA).

United States District Court, D. Connecticut.

Sept. 30, 2003.

Jonathan Abels, West Hartford, CT, Otto P. Witt, Bloomfield, CT, for Plaintiff.

Eric P. Daigle, James J. Szerejko, Michael C. Collins, Halloran & Sage, Hartford, CT, for Defendants.

### Ruling on Defendants' Motion for Summary Judgment
### [Doc. # 48]

ARTERTON, District Judge.

Plaintiff Jose Galindez' ("Galindez") suit against defendants City of Hartford ("Hartford") and Martin Miller ("Miller"), a Hartford police officer, alleges claims arising from an altercation with Miller on August 3, 1999, under 42 U.S.C. § 1983, the Connecticut constitution, and common law. Count one is directed against Miller in his individual and official capacity under 42 U.S.C. § 1983 for deprivation of Fourth Amendment rights; count two is directed against Hartford under 42 U.S.C. § 1983 for maintaining a policy or custom of deliberate indifference to civilian complaints of police excessive force; count three is a state common law claim for assault and battery against Miller; count four is a claim under the Connecticut constitution directed against both Miller and Hartford; and count five is a common law negligence claim against Miller. Defendants now move under Fed.R.Civ.P. 56 for summary judgment on counts one, two, and five.

For the reasons set forth below, defendants' motion is DENIED.

### I. Defendants' Summary Judgment Motion

Although defendants' motion is labeled as one for "summary judgment," Miller's attack on counts one and five is directed solely against the allegations of the amended complaint, without attempt to support the motion by pointing to the absence of record evidence on an essential element of either count. *See* Def.'s Mem. in Supp. at 5, 6, 15. Accordingly, the Court will treat Miller's motion on those two counts as made under Fed.R.Civ.P. 12(b)(6). *See* 10A Wright, Miller, and Kane, Federal Practice and Procedure: Civil 3d § 2722, at 368 (1998 & Supp.2003) ("Federal Practice") (". . . [I]f the [summary judgment] motion is made solely on the basis of one or more pleadings, it is equivalent to a motion under Rule 12(b)(6) for a dismissal for failing to state a claim for relief or under Rule 12(c) for a judgment on the pleadings and should be treated as such." (citing cases)).

With respect to count two, defendant Hartford alternates between attacks on the sufficiency of Galindez' allegations and assertions of lack of evidence in support of plaintiff's claim. *See* Def.'s Mem. in Supp. at 8, 9, 11. The Court will treat that part of the motion as one for summary judgment under Fed.R.Civ.P. 56.

### II. Standard under Fed.R.Civ.P. 12(b)(6)

When deciding a motion to dismiss, the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). A complaint should not be dismissed for failure to state a claim unless it appears beyond

doubt that the plaintiff can prove no set of facts in support of his or her claim which would entitle plaintiff to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)("The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test.").

### A.   Count One

■ In Galindez' amended complaint, he describes the "nature of action" as arising under 42 U.S.C. § 1983 and the "First and Fourteenth" amendments to the United States Constitution. While the amended complaint nowhere provides indication of how those amendments were violated, it clearly sets forth claims actionable under the Fourth Amendment, which plaintiff references as applicable through the Fourteenth Amendment. *See* Pl.'s L. Rul. 9(c)(2) Statement ¶ 1. Defendant Miller essentially contends that Galindez' failure to specify by name the Fourth Amendment in count one or anywhere else in the complaint requires dismissal,[1] asserting that plaintiff must instead be required to prove his claims under the incorrectly identified amendments.

The Court disagrees. In the context of suits brought under Title VII of the Civil Rights Act and the Age Discrimination in Employment Act, the Supreme Court reiterated the long standing principle that the liberal pleading rules of Fed.R.Civ.P. 8(a)(2)("a short and plain statement of the claim showing that the pleader is entitled to relief") are with limited exception applicable to all civil actions and simply require plaintiff to " 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.' " *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (*quoting Conley,* 355 U.S. at 47, 78 S.Ct. 99). This standard is satisfied here. Miller's memoranda articulate the precise constitutional claims pleaded by Galindez in count one of his amended complaint. *See* Def.'s Mem. in Supp. at 4 ("The gravamen of the plaintiff's complaint is that he was deprived of his Fourth Amendment right to be free from unreasonable seizures when he interacted with Officer Miller on August 3, 1999. Although not specifically, he suggests that he was falsely arrested based upon the warrant application signed by the defendant, Officer Miller.") and *supra* at note 3. If Galindez' pleading had failed to provide sufficient notice to Miller of claims under the Fourth Amendment (as it obviously did not), Miller's options were to move under Fed.R.Civ.P. 12(e) for a more definite statement *or* to utilize the discovery process to pin down the precise factual claim and thereby develop the record from which to demonstrate the lack of evidence in support of Galindez' clarified claim by motion for summary judgment. *See Swierkiewicz,* 534 U.S. at 514, 122 S.Ct. 992.[2]

---

1.  *See* Def.'s Reply at 2 ("Regardless of what the plaintiff states ... concerning allegations of his alleged illegal seizure ... it is clear in his ... Amended Complaint that he based them upon the Fourteenth Amendment ... [H]e has failed to seek an amendment to his Amended Complaint to cure this defect on three (3) distinct occasions when it has been brought to his attention.").

2.  The Court notes that, to the extent plaintiff meant to allege a claim under the First Amendment to the Constitution (and count one of the amended complaint belies this notion), such claim has been abandoned. *See* Pl.'s Opp'n at 7–8.

## B. Count Five

Miller argues that because paragraphs 10 and 11 of count five (common law negligence) describe discretionary acts of a municipal employee, he is entitled to governmental immunity for his actions under *Gordon v. Bridgeport Hous. Auth.,* 208 Conn. 161, 544 A.2d 1185 (1988). Even assuming *arguendo* that Miller's actions were discretionary, Miller is not entitled to governmental immunity as a matter of law.

Plaintiff's amended complaint generally describes the manner and method Miller used to effect plaintiff's forcible removal from his residence, his subsequent arrest,[3] and his transfer to an ambulance:

10. Defendant Miller owed a duty of care to the plaintiff which was that degree of care which a reasonably careful police officer would use under the circumstances and knew, or in the exercise of reasonable care and proper diligence, should have known that his failure to exercise said duty of care would be likely to subject the plaintiff to imminent harm.

11. Defendant Miller was negligent in the following manner:

   a. he failed to call an ambulance prior to attempting to remove plaintiff from his residence.

   b. he knew or should have known that plaintiff would react adversely to being removed from his residence.

   c. he forced Galindez out of his apartment without a warrant and without any cause.

   d. knowing that Galindez was intoxicated, he failed to use reasonable care to prevent injury to Galindez.

   e. he provoked Galindez to attempt to protect himself resulting in injury to Galindez.

   f. he dragged Galindez to the ambulance causing additional injury to Galindez.

■■■ "A municipal employee ... has a qualified immunity in the performance of a governmental duty, but he may be liable if he misperforms a ministerial act, as opposed to a discretionary act...." *Colon v. City of New Haven,* 60 Conn.App. 178, 180, 758 A.2d 900 (2000)(quotation omitted). Even when performing a discretionary act, however, a municipal employee may be liable in certain situations, including "where the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm...." *Id.* at 181, 758 A.2d 900 (*quoting Evon v. Andrews,* 211 Conn. 501, 505, 559 A.2d 1131 (1989)).

"The hallmark of a discretionary act is that it requires the exercise of judgment. 'On the other hand, ministerial acts are performed in a prescribed manner without the exercise of judgment or discretion as to the propriety of the action.'" *Lombard v. Edward J. Peters, Jr., P.C.,* 252 Conn. 623, 628, 749 A.2d 630 (2000)(*quoting Gordon,* 208 Conn. at 167–68, 544 A.2d 1185). As a general matter, unless it is apparent from the complaint that the act or omission in question is ministerial or discretionary, "'the determination ... is normally a question of fact for the fact finder.'" *Colon,* 60 Conn.App. at 181–82, 758 A.2d 900 (*quoting Lombard,* 252 Conn. at 628, 749 A.2d 630).

**3.** Deposition testimony of Miller, provided by plaintiff, states that Miller put Galindez under arrest and informed a conscious Galindez of that fact in between the removal from the apartment and transfer to the ambulance. *See* Miller Dep. at 21–22.

The manner in which a police officer makes an arrest or otherwise intervenes to remove an individual from a residence, including determining what level of force to use under the circumstances, appears to fit within the framework of the day to day discretion exercised by police officers.[4] Plaintiff's allegations regarding Miller's conduct thus apparently describe discretionary action, and he makes no claim that Miller was required to carry out Galindez removal, possible arrest, and transport in a prescribed manner, *see Colon*, 60 Conn.App. at 182–83, 758 A.2d 900.

However, even assuming arguendo that Miller's actions required exercise of judgment, Miller is not entitled to qualified immunity at this stage because Galindez could adduce evidence which would bring Miller's actions within the scope of the identifiable person-imminent harm exception. Miller's direct dealings with Galindez certainly qualify plaintiff as an identifiable individual, and facts consistent with Galindez' pleadings could demonstrate that the alleged use of force by Miller was negligent and likely to subject Galindez to imminent harm. *See Castorina*, 1998 WL 309393 at *7 (triable issue regarding applicability of identifiable person-imminent harm exception to forcible detention and arrest of plaintiff); *see also Mikita*, 2001 WL 651171 at *4 (same with respect to forcible detention resulting from misidentification). Miller's entitlement to governmental immunity must await a fully developed factual record and cannot be determined as a matter of law from the pleadings.

### III. Summary Judgment Standard

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

Where, as here, the non-moving party bears the burden of proof at trial, the party moving for summary judgment may satisfy its initial burden of production by demonstrating the absence of a genuine issue of material fact on an essential element of the non-moving party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once that burden is met, the non-moving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 56(c) and (e)).

"A District Court must resolve any factual issues of controversy in favor of the non-moving party," *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990), mindful that "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The district court's ultimate concern is to ascertain "whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved

---

4. *See Castorina v. Stewart*, No. CV 950324487, 1998 WL 309393, at *6 (Conn.Super. June 3, 1998); *see also Mikita v. Barre*, No. CV 990430564, 2001 WL 651171, at *3 (Conn.Super. May 22, 2001)(misidentification and subsequent detainment of plaintiff required exercise of judgment by police officers).

in favor of either party." *Id.* at 250, 106 S.Ct. 2505.

## IV. Count Two (42 U.S.C. § 1983 against Hartford)

As clarified in plaintiff's opposition, count two of the amended complaint alleges that Hartford's sustained and continuing deliberate indifference to civil complaints of police brutality has resulted in the customary use of excessive force by its police officers, and, as a proximate result of such policy of deliberate indifference, Galindez suffered injuries from his altercation with Miller. In the nomenclature of § 1983, this is categorized as "failures in supervision, discipline, and/or remedial action." *See* 1B Martin A. Schwartz and John E. Kirlin, Section 1983 Litigation § 7.18 (3rd ed. 1997 & Cum.Supp.2003–1).

Hartford's memoranda contend that Hartford is entitled to summary judgment for two reasons: 1) there is no evidence in the record of the existence of a policy or custom of Hartford of deliberate indifference to police officers' use of excessive force, or of any causal link between any such custom and officer Miller's actions; and 2) all evidence offered by plaintiff in opposition to Hartford's motion is either hearsay or in a form not admissible at trial.

### A. Evidentiary Objections

Plaintiff's "specific facts showing there [are] genuine issue[s] for trial," Fed. R.Civ.P. 56(e), consist of four types of evidence on Hartford's deliberate indifference to civilian complaints of police brutality: 1) investigative report # 99–59 of the Internal Affairs Division ("IAD") of the Hartford Police Department ("HPD") documenting plaintiff's complaint about Miller and its subsequent investigation; 2) HPD's "General Order" on "Policy and Procedure" dated August 2, 1991; 3) a "Sum-

mary of IA[D] Complaints alleging Excessive Force" for the years of 1999, 2000, and 2001; and 4) computer printouts appearing to be records from an insurance company's computer database summarizing lawsuits against Hartford and/or its police officers, excessive force subject matter, date of incident, docket number, and, in some cases, whether the case was settled. With the exception of HPD's "General Order," defendants object to the Court's considering any of the proffered evidence on summary judgment, arguing generally that the other three types of materials are hearsay, in a form not admissible into evidence, and/or lacking proper authentication.

■ "The nonmoving party [is not required to] produce evidence in a form that would be admissible at trial in order to avoid summary judgment." *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. The context of the Supreme Court's statement in *Celotex* makes clear that, in addition to not having to depose its own witnesses, a non-moving party could meet its rebuttal burden with evidentiary materials both not specifically identified in Fed.R.Civ.P. 56 and not currently in admissible form. *See id.; see also* 10A Federal Practice § 2721, at 360–61 ("The court and the parties have great flexibility with regard to the evidence that may be used on a Rule 56 proceeding. . . . [T]he particular forms of evidence mentioned in the rule are not the exclusive means of presenting evidence on a Rule 56 motion."). Although it is generally desirable that documents submitted for review on summary judgment be authenticated, *see* 10A Federal Practice § 2722, at 381–84, the Second Circuit has stated, "when the evidence offered in opposition to [a motion ... for summary judgment] is defective in form but is sufficient to apprise the court that there is important and relevant information that could be proffered to

defeat the motion, summary judgment ought not to be entered." *Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1389 (2d Cir.1992)(quotation omitted).

Here, as explained below, plaintiff's proffered submissions raise a genuine issue of material fact regarding whether Hartford has a policy of deliberate indifference to the use of excessive force by its police officers and whether such policy proximately caused a deprivation of Galindez' constitutional rights. The submissions themselves, with appropriate foundation and authentication, or the evidence to which they point may be admissible at trial, even if only for limited purposes. The investigative report could be admissible for the limited purpose of Hartford's knowledge and handling of both Galindez' and other similar complaints. The IAD complaints summary demonstrates that the actual "complaints" contain detailed information regarding the evidence which may be admissible under Fed.R.Civ.P. 404(b) as evidence of Hartford's knowledge and intent with respect to complaints and investigations of police brutality. The printouts may be admissible as business records, or point to the existence of evidence of publicly filed court documents, judicially noticed as to the fact of the litigation, its disposition, and any related facts appearing in the case record, *see Liberty Mut.*, 969 F.2d at 1388. Finally, plaintiff may call witnesses for testimony about the factual matter described in the complaints or regarding the investigation methods used.

The foregoing is by no means a predetermination by the Court of admissibility of any particular item of evidence, but at the same time it is inappropriate to render summary judgment where the proffered submissions point to relevant potentially admissible evidence at trial that is sufficient to defeat Hartford's motion.

### B. Existence of Custom and Causal Link

■ "In order to establish the liability of a municipality in an action under § 1983 for unconstitutional acts by a municipal employee below the policymaking level, a plaintiff must establish that the violation of his constitutional rights resulted from a municipal custom or policy." *Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995).[5] The policy or custom need not be written or explicitly stated, *see Villante v. Dept. of Corr.*, 786 F.2d 516, 519 (2d Cir. 1986), and "[a] § 1983 plaintiff injured by a police officer may establish the pertinent custom or policy by showing that the municipality, alerted to the possible use of excessive force by its police officers, exhibited deliberate indifference." *Vann*, 72 F.3d at 1049; *see also Beck v. City of Pittsburgh*, 89 F.3d 966 (3d Cir.1996); *Fiacco v. City of Rensselaer*, 783 F.2d 319 (2d Cir.1986).

■ At trial, plaintiff bears the burden of proving deliberate indifference by demonstrating that the need for more supervision to protect against excessive force was obvious, *see Vann*, 72 F.3d at 1049, which burden may be demonstrated by the existence of repeated complaints of civil rights violations (apart from the merits of such claims), and corresponding absence or inadequacy of investigations or actions by the municipality to prevent future incidents. *See id.; Beck*, 89 F.3d at 972–76; *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir.1991); *Fiacco*, 783 F.2d at 328.

■ Hartford argues that there is no evidence to demonstrate deliberate indif-

---

**5.** It is undisputed that officer Miller is below the policymaking level.

ference, pointing to evidence that Hartford has a civilian complaint procedure in place and that plaintiff in fact availed himself of that process. Hartford further contends that the undisputed evidence that defendant Miller only had this excessive force complaint filed against him while a member of HPD precludes any factual finding of a causal link between the alleged municipal policy of deliberate indifference and the deprivation of plaintiff's Fourth Amendment rights claimed.

Hartford's first contention is at variance with established case law recognizing that the mere existence of a complaint procedure, even a fairly sophisticated one (and even if coupled with corresponding investigation) may be insufficient to avoid municipal liability because the critical inquiry is whether such procedural safeguards are reasonably adequate or obviously deficient. *See Beck,* 89 F.3d at 974–75; *Fiacco,* 783 F.2d at 328–31.

Plaintiff points to the IAD complaints to demonstrate: 1) in 1999, there were twenty-four excessive force complaints lodged against Hartford police officers, nine of which remain open, and six of which were closed without investigation; 2) in 2000, there were twenty-three excessive force complaints filed, eight of which remain open; 3) in 2001, there were twenty-six excessive force complaints filed, seventeen of which remain open; 4) that in almost none of the investigations was HPD Form #60 (Use of Non–Lethal Force Report) completed as required by HPD's "General Order" ("Supervisory personnel shall require HPD Form 60 be completed for any apparent injury or claim of injury."); and 5) in no case was a complaint sustained against an officer and corresponding discipline administered.

Similarly, plaintiff points to the insurance record summaries to demonstrate that, during 1999, seventeen excessive force lawsuits were filed against Hartford and/or its police officers in federal and state courts (stemming from incident dates ranging from 1996 to 1998), ten of which were settled; during 2000, thirteen excessive force lawsuits were filed, four of which were settled; and during 2001, nine excessive force lawsuits were filed, none of which have to date been settled.[6]

Finally, plaintiff points to the investigative report of his own complaint. The investigation into the August 3, 1999 incident started promptly after Galindez' son filed the complaint on August 5, 1999. The case was assigned on August 9, 1999 to Sergeant Andrew Nelson of IAD, who obtained a statement from Miller on August 26, 1999. However, unexplained by Hartford, seventeen and one half months passed before any further action was taken on the complaint. On February 16, 2001, the case was assigned to Sergeant Polletta of IAD. Sergeant Polletta promptly obtained the dispatch printout for the August 3, 1999 altercation and the booking photograph of Galindez. Then, on March 7, 2001, Sergeant Polletta unsuccessfully attempted to locate Galindez. Four and one half months later, on July 22, 2001, Galindez served the summons and complaint for the present suit on Miller and the HPD,[7] after which, from September through December of 2001, there was a torrent of investigative activity, during which time Sergeant Polletta obtained Galindez' crimi-

---

**6.** Although some of proffered submissions document complaints of excessive force after the date of Galindez' encounter with Miller, they may still be probative of whether or not Hartford and its policymakers maintained a policy of tacitly approving or tolerating the use of excessive force. *See Beck,* 89 F.3d at 972.

**7.** The HPD was originally a defendant in the suit instead of Hartford.

nal history, interviewed and/or took statements from several witnesses, and created a final report for Lieutenant Dennis Dowd, Commander of Internal Affairs Division.

The evidence on which the Second Circuit affirmed a jury verdict of municipal liability in *Fiacco v. City of Rensselaer,* 783 F.2d 319 (2d Cir.1986), consisted of the following: the existence of general procedures relating to appropriate supervision of police officers but a failure to implement those policies, seven written civilian complaints of police brutality (occurring within the five years previous to the incident at issue in the case), testimony of four of those complainants, and testimony of the police chief regarding his handling of each of the four testifying witnesses' cases as well as a fifth excessive force claim (three of the five concerned one of the defendant officers). Such evidence demonstrated, among other things, the repeated failure to investigate complaints or, if an investigation was conducted, to hold any hearings or take statements other than those of the officers involved, and to impose any discipline.

Similarly, in *Beck v. City of Pittsburgh,* 89 F.3d 966 (3d Cir.1996), reversing the district court's grant of defendant's motion under Fed.R.Civ.P. 50(a), the Third Circuit found sufficient evidence of municipal liability for a jury determination. That evidence included testimony by civilian assistant Carla Gedman, who worked at the office responsible for investigating complaints against police officers, detailing the superficiality of the city's review process and its failure to take into account claims of repeated complaints against particular officers. It also included evidence of several civilian complaints revealing that the officer in question had been involved in four violent encounters with civilians in the three years preceding the incident with plaintiff.

Plaintiff's proffered evidence lacks equivalent testimony of an individual with knowledge about HPD's process of reviewing civilian complaints in general or the treatment of the more than seventy complaints. Even though the evidence offered by Galindez does not appear as developed or strong as the evidence offered by plaintiffs in *Fiacco* and *Beck,* the role of the Court is not to weigh the evidence on summary judgment, but to determine whether Galindez has submitted enough to create a material issue of fact regarding the existence of a policy of deliberate indifference to police use of excessive force against citizens. Paralleling many of the considerations in *Fiacco* and *Beck,* a reasonable jury, viewing the evidence in a light most favorable to plaintiff, could conclude from plaintiff's submissions that Hartford does not take civilian complaints of excessive force seriously, as shown by a pattern of allowing complaints to molder and gray without adequate attention (until the epiphany of federal civil litigation inspires action), and fails to impose any form of discipline on officers against whom excessive force complaints have been lodged (at least during a three year period from 1999–2001 in which over seventy such complaints were filed). Hartford's establishment of a civilian review board in 1992 and the fact that Galindez' complaint came before that board are not sufficient to exclude adverse inferences as to obvious deficiencies in the review board's operations, particularly as Hartford offers no evidence regarding that review board's actual operations.

The issue of causation is closer. Plaintiff concedes that he is not aware of any other complaints filed against Miller for excessive force from January 1, 1999 through December 31, 2001. Hartford, pointing to this absence, would have this Court adopt a rule of law requiring sum-

mary judgment where a plaintiff cannot establish at least one prior complaint of violence against the particular officer who assaulted him before municipal liability can attach.

The causal link between a municipality's deliberate indifference and the act of an officer is undoubtedly weakened by the absence of prior complaints against that officer, and "the existence of a policy of nonsupervision amounting to deliberate indifference to constitutional rights cannot be established by inference solely from evidence of the occurrence of the incident in question," *Fiacco*, 783 F.2d at 328. However, a reasonable jury could conclude from plaintiff's evidence that Hartford had a policy or pervasive pattern of deliberate indifference to the possibility that its officers were prone to use excessive force, as demonstrated principally by Hartford's failure to reasonably investigate complaints and the absence of punitive consequences for any accused officer, that such policy or pattern may have emboldened or implanted a sense of impunity in its officers, resulting in the challenged first offense by this defendant, and that the offense would not have occurred had proper investigation and police discipline procedures been in place.

## V.   Conclusion

For the reasons set forth above, defendants' motion [Doc. # 48] is DENIED.

IT IS SO ORDERED.